# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Urban Affairs Coalition

**DEFENDANTS**
Karen Nicholson

**(b)** County of Residence of First Listed Plaintiff: Phila. County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Trumbull County, OH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Malcolm J. Ingram, Littler Mendelson P.C., 1601 Cherry St., Suite 1400, Phila. PA 19102; 267.402.3000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [x] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq.

Brief description of cause:
Misappropriation of trade secrets

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 5/5/2025

SIGNATURE OF ATTORNEY OF RECORD: /s/ Malcolm J. Ingram

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| URBAN AFFAIRS COALITION<br><br>           Plaintiff,<br><br>     v.<br><br>KAREN NICHOLSON<br><br>           Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff Urban Affairs Coalition ("UAC"), hereby files the above-captioned action against Defendant Karen Nicholson ("Defendant" or "Ms. Nicholson"), and states:

## PARTIES

1. UAC is a Philadelphia, PA 501(c)(3) with a principal place of business in Philadelphia, Pennsylvania.

2. Karen Nicholson is an adult individual residing at 2729 Burton Street, Warren, OH, 44484.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this District because there is complete diversity between the parties and the amount-in-controversy requirement is established. 28 U.S.C. § 1332.

4. The amount-in-controversy exceeds $75,000. As further discussed below, UAC seeks injunctive relief, costs, expenses, and incidental and consequential damages.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District, and because Defendant is subject to the Court's personal jurisdiction in this District.

1

**FACTUAL ALLEGATIONS**

6. UAC is dedicated to uniting government, business, neighborhoods, and individual initiatives to improve the quality of life in the region, build wealth in urban communities, and solve emerging issues.

7. UAC operates the Economic Development Projects ("EDP") program through which it partners with developers and owners including hospitals, universities, and museums, to create Economic Opportunity Plans ("EOP").

8. UAC's EOPs help its clients award contracts to the most qualified businesses, and assist its clients in successfully employing marginalized employees who are often overlooked.

9. UAC also serves as a fiscal sponsor for numerous partner organizations ("program partners") located within Philadelphia and its surrounding counties.

10. As a fiscal sponsor, UAC provides its program partners with comprehensive general management, financial, administrative, and human resources support.

**UAC's Trade Secrets**

11. Because of the competitive industry in which UAC operates, UAC closely guards its confidential and proprietary information.

12. UAC has achieved, and will continue to maintain, its present competitive advantage by preserving the confidential and proprietary nature of its trade secrets and confidential information including its proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information, pricing and profitability information.

13. UAC has taken and continues to take great care to maintain the confidential and trade secret nature of such information by retaining an experienced IT management company, The Hierarchy.

14. The Hierarchy specializes in professional IT services, and offers a broad range of services including IT project management, network and systems integration, cloud services, and IT security.

15. UAC limits access to its confidential information to those with a business need to access it, and requires the employees and contractors its grants access to its confidential information to sign confidentiality agreements.

16. If UAC's confidential and proprietary information were to become available to a competitor or become public knowledge, UAC's competitive advantage and the substantial investment made by UAC in developing and maintaining its trade secrets and confidential information would be irreparably injured and/or destroyed.

**UAC's Data Migration**

17. From January 2009 through September 2021, UAC hosted its confidential and proprietary information on its secure servers located at 1207 Chestnut Street, Philadelphia, PA.

18. The confidential and proprietary information included UAC's EDP contracts and proposals, contracts with program partners and third parties, and its payroll systems. It also included the names and banking information of UAC's employees, program partners, sponsors, and donors.

19. In October 2021, UAC decided it wanted to move away from hosting its confidential and proprietary information on secure servers located on site, to hosting this confidential and proprietary information in a NetSuite cloud.

20. UAC made this decision because hosting its confidential and proprietary information in a NetSuite cloud provided greater security than physically hosting this data at 1207 Chestnut Street, Philadelphia, PA.

21. To complete this data migration, UAC hired The Hierarchy, an experienced IT company.

### The Hierarchy Retained Ms. Nicholson to Assist with UAC's Data Migration

22. The Hierarchy then retained Defendant Karen Nicholson as a Structured Query Language ("SQL") Professional in early-November 2021, to assist with this project.

23. The Hierarchy and Ms. Nicholson agreed she would work for the Hierarchy as an independent contractor on a temporary basis until The Hierarchy completed UAC's data migration.

24. To ensure UAC's confidential and proprietary information remained protected and Ms. Nicholson did not misappropriate it, The Hierarchy made Ms. Nicholson sign a non-disclosure/confidentiality agreement before granting her access to UAC's confidential and proprietary information.

25. This confidentiality agreement required Ms. Nicholson to keep UAC's confidential and proprietary information confidential, not share it with third parties, and not download or keep this information once her work with The Hierarchy ended.

26. On November 3, 2021, Ms. Nicholson signed and returned The Hierarchy's non-disclosure/confidentiality agreement, via email. She also provided The Hierarchy with her W-9[1], a copy of her driver's license, and her banking information. *See* Nicholson's November 21, 2021 email, attached as Ex. A.

27. Shortly thereafter, The Hierarchy granted Ms. Nicholson access to UAC's confidential and proprietary information.

---

[1] A W-9 form is completed by an independent contractor for a business and provided to that business for their records. Employers use W-9 forms to complete form 1099, which details the compensation an employer pays an independent contractor.

### Ms. Nicholson Keeps UAC's Confidential and Proprietary Information

28. Ms. Nicholson worked for The Hierarchy on UAC's data migration from November 2021, until The Hierarchy ended her contract in July 2023.

29. As part of Ms. Nicholson's termination, The Hierarchy disabled her access to UAC's confidential and proprietary information, and reminded her of her ongoing obligations under the non-disclosure/confidentiality agreement she signed in November 2021.

30. Despite this reminder, Ms. Nicholson kept UAC's confidential and proprietary information in direct violation of the terms of her non-disclosure/confidentiality agreement.[2]

### Ms. Nicholson Does Not Sue The Hierarchy After Receiving Dismissal Notice

31. In September 2023, Ms. Nicholson filed a Charge of Discrimination ("Charge") against The Hierarchy with the Equal Employment Opportunity Commission ("EEOC").

32. Ms. Nicholson's Charge alleged The Hierarchy subjected her to retaliation, reverse race, sex, and disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").

33. On February 14, 2024, the EEOC dismissed Ms. Nicholson's Charge after concluding it could not substantiate her claims.

34. The EEOC's February 14 Dismissal Notice instructed Ms. Nicholson and her counsel that Ms. Nicholson had ninety days from February 14, 2024, to file a lawsuit against The Hierarchy in federal court.

35. Ms. Nicholson declined to file a lawsuit against The Hierarchy in federal court.

---

[2] UAC did not discover this until Ms. Nicholson published its trade secrets in early-2025.

5

## Ms. Nicholson Files an EEOC Charge Against UAC After the EEOC Dismissed Her Charge Against The Hierarchy

36. Instead, she filed a Charge against UAC with the EEOC despite UAC never being her employer.

37. This Charge alleged UAC subjected her to retaliation, reverse race discrimination, age discrimination, and gender discrimination in violation of Title VII and Age Discrimination in Employment Act ("ADEA").

38. On August 21, 2024, the EEOC dismissed Ms. Nicholson's Charge against UAC concluding it could not substantiate her claims.

39. Like the February 14 Dismissal Notice, the EEOC's August 21 Dismissal Notice instructed Ms. Nicholson and her counsel that Ms. Nicholson had ninety days from August 21, 2024, to file a lawsuit against UAC in federal court.

40. Ms. Nicholson did not file a lawsuit against UAC in federal court.

41. Rather, she began a public smear campaign of UAC.

## Ms. Nicholson Admits She Misappropriated UAC's Trade Secrets

42. In January 2025, Ms. Nicholson published a website entitled https://the-hierarchy.net.

43. Ms. Nicholson is the sole owner and operator of this website.

44. In March 2025, Ms. Nicholson inadvertently admitted she misappropriated UAC's confidential and proprietary information in two ways.

45. First, she admitted on her website that she kept over 1,000 emails from UAC management. *See* March 28, 2025 snippet from Ms. Nicholson's website below.[3]

---

[3] To track and monitor the trade secrets Ms. Nicholson posts on her website, UAC is backing up her site. This snippet is from a March 28, 2025 backup of her https://the-hierarchy.net site.

> I have over 1,000 emails from UAC management tracking this and a plethora of other issues since 2/2023. For God's sake, my missing paycheck should be the least of UAC's worries.

46. Second, she published numerous snippets[4] of UAC's confidential and proprietary information on her website. Examples of the confidential and proprietary information Ms. Nicholson posted snippets of include current EDP business plans, pricing and profitability information, strategies for new services and expansion, proposals, and payroll records.

47. Despite receiving notification that UAC has discovered Ms. Nicholson's misappropriation of its confidential and proprietary information, Ms. Nicholson refuses to allow a forensic examination of her computer and electronic data storage devices and cloud accounts to remove UAC's information.

48. The retention of UAC's confidential and proprietary information in the hands of Ms. Nicholson will cause irreparable injury to UAC. This information, in the hands of a competitor, would cause extensive economic and business injury to UAC.

49. The harm to UAC caused by Ms. Nicholson's conduct includes the misappropriation, misuse, and disclosure of UAC's confidential and proprietary information and the impairment of and interference with UAC's relations with its program partners and clients.

### Ms. Nicholson Publishes Blatantly False Statements About UAC

50. Ms. Nicholson also disregarded the truth and published numerous false statements about UAC and its senior leadership team on her website in March and April 2025.

---

[4] To protect the confidentiality of UAC confidential and proprietary information, UAC is not posting these snippets in this Complaint.

51. For example, in March 2025, Ms. Nicholson falsely claimed "in [her] opinion,[5] UAC may be complicit in facilitating alleged tax and alleged welfare fraud." *See* March 28, 22025 snippets from Ms. Nicholson's website below.[6]

> In my opinion, UAC may be complicit in facilitating alleged tax and alleged welfare fraud. The Philadelphia County Assistance Office (CAO) requires all income be

> **OFFICE SPACE-INSPIRED FRAUD**
>
> **How to make $120K a year to process one person's timesheets**
>
> Jacques Latoison has allegedly been padding timesheets for the past twenty years. The City of Philadelphia, UAC, and Infinite Economic Development Solutions are allegedly complicit, as they are aware of the Hierarchy's alleged fraudulent DEI timesheet padding and continue to support Latoison.

52. In April 2025, Ms. Nicholson continued to publish factually inaccurate defamatory statements about UAC targeting its senior leadership team.

53. For example, Ms. Nicholson claimed UAC's Chief Administrative Officer Kevin Satterthwaite allowed a con artist to bill for hours he never worked, and participated in this con artist's theft. *See* April 2025 Snippet from Karen Nicholson's website below.[7]

---

[5] UAC believes Ms. Nicholson conveniently uses the phrase "in my opinion" in hopes of making this statement appear as if it is non-actionable opinion. Despite this phrase, Ms. Nicholson's statement is actionable because it is a mixed opinion based on undisclosed facts.

[6] The snippets below are from a March 28 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

[7] The snippets below are from a April 24 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

> Kevin Satterthwaite must be held accountable for his failure to protect taxpayer money from a known tax cheat to whom he irresponsibly entrusted unrestricted funds. For ten (10) years, he allowed this con artist to bill for hours that were never worked. When confronted with evidence that Latoison had stolen paychecks, Satterthwaite deflected blame, effectively endorsing the fraudster through his alleged inaction. Furthermore, Satterthwaite allegedly participated in the theft of services by endorsing not paying for mission-critical databases commissioned by UAC EDP during its fake criminal investigation.

54. Ms. Nicholson also falsely claimed UAC's President Arun Prabhakaran allowed The Hierarchy to embezzle taxpayers' funds. *See* April 2025 Snippet from Karen Nicholson's website below.

> Arun Prabhakaran makes documentaries about Philadelphia crime.
> In my opinion, it *seems* Arun might have **allowed** his IT vendor to allegedly embezzle taxpayer funds. Unless:

55. Finally, Ms. Nicholson published a meme of UAC's Chief Executive Officer Sharmain Matlock-Turner falsely claiming she could explain how to get paid for ghost hours and steal paychecks. *See* April 2025 Snippet from Karen Nicholson's website below.



56. None of Ms. Nicholson's statements concerning UAC and its senior leadership are true.

## COUNT I
## MISSAPROPRIATION OF TRADE SECRETS
## Pennsylvania Uniform Trade Secrets Act

57. UAC incorporates by reference the preceding paragraphs of its Verified Complaint.

58. Ms. Nicholson took UAC's trade secrets and confidential and proprietary information while performing work on the UAC data migration project.

59. She maintains this information in her possession, custody, and control, and refuses to return it.

60. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

61. By the conduct described above, Ms. Nicholson is engaging in the actual or threatened misappropriation in violation of the Pennsylvania Uniform Trade Secrets Act. 12. Pa. C.S. § 5301 *et seq*.

62. UAC has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Ms. Nicholson is enjoined as requested below.

63. Greater injury will be inflicted on UAC by the denial of this relief than will be inflicted on Ms. Nicholson by the granting of this relief.

64. Ms. Nicholson's actions were intentional, willful, outrageous, malicious, and justify the imposition of exemplary damages.

## COUNT II
## MISSAPROPRIATION OF TRADE SECRETS
### Defend Trade Secrets Act

65. UAC incorporates by reference the preceding paragraphs of its Verified Complaint.

66. Ms. Nicholson took UAC's trade secrets and confidential and proprietary information while performing work on the UAC data migration project.

67. She maintains this information in her possession, custody, and control, and refuses to return it.

68. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

69. By the conduct described above, Ms. Nicholson is engaging in the actual or threatened misappropriation in violation of the Defend Trade Secrets Act. 18. U.S.C. § 1831, *et seq.*

70. UAC has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Ms. Nicholson is enjoined as requested below.

71. Greater injury will be inflicted on UAC by the denial of this relief than will be inflicted on Ms. Nicholson by the granting of this relief.

72. Ms. Nicholson's actions were intentional, willful, outrageous, malicious, and justify the imposition of exemplary damages.

## COUNT III
### Defamation *Per Se*

73. UAC incorporates by reference the preceding paragraphs of its Verified Complaint.

74. Ms. Nicholson's website published numerous false and defamatory *per se*, statements of fact about UAC to the world.

75. Ms. Nicholson's false and defamatory statements were made with actual malice, that is with knowledge of the falsity of the statements or with reckless disregard for the truth.

76. Ms. Nicholson's false statements of fact were and are undoubtedly understood by any recipients of the statements to be defamatory in nature as they tend to harm the reputation of UAC, lower it in the estimation of the community, denigrate UAC's current and prospective employees, and other third parties with which UAC does or may engage in business, from engaging with it.

77. Ms. Nicholson had no conditionally privileged occasion on which she was permitted to make such defamatory statements.

78. As a result of Ms. Nicholson's false and defamatory statements of fact made with actual malice, UAC has, and will continue to, suffer damages, including reputational harm and loss of good will, in additional to attorneys' fees and costs. For example, a likely consequence is that, in a competitive labor market, UAC may be erroneously viewed as a nonprofit that embezzles or allows its vendors to embezzle funds, and a nonprofit that treats its vendors' subcontractors unfairly and dishonestly.

## COUNT IV
## False Light Invasion of Privacy

79.    UAC incorporates by reference the preceding paragraphs of its Verified Complaint.

80.    Ms. Nicholson's March and April 2025 posts on her website invaded UAC's privacy by publicly placing it in a false light.

81.    Ms. Nicholson's published written statements, viewed by numerous people, indicate UAC and its senior leadership team allowed its IT vendor to embezzle taxpayers' funds, were complicit in fraud, received payments for hours no one worked, and stole paychecks.

82.    Ms. Nicholson had knowledge of and/or acted in reckless disregard for, the falsity of her publications and the false light in which her publications placed UAC and its senior management team.

83.    UAC found these statements highly offensive because they were false and unfair, and did not wish for anyone to view them.

84.    UAC has suffered damages as a result of Ms. Nicholson's publication, including loss of credibility as a nonprofit, embarrassment, and humiliation.

WHEREFORE, UAC requests the following relief:

a)    Ms. Nicholson, and all other persons or entities acting in concert with her or on her behalf, be temporarily, preliminarily, and permanently enjoined from using, retaining, or otherwise interfering with UAC's possession and control of its property, including any trade secrets, confidential information, or other intellectual property;

b)    Ms. Nicholson, and all other persons or entities acting in concert with her or on her behalf, be temporarily, preliminarily, and permanently enjoined from directly or indirectly using, disclosing, or retaining any trade secrets or confidential and proprietary information of UAC;

c) Ms. Nicholson be ordered to produce for examination and remediation all her computers, electronic data storage devices, and cloud accounts and to cooperate in the return of UAC's information and remediation of her misappropriation;

d) A judgment in UAC's favor and against Ms. Nicholson for monetary damages in an amount in excess of $150,000, including all amounts necessary to compensate UAC for Ms. Nicholson's wrongful activities including reasonable attorneys' fees and costs for her willful misconduct;

e) a judgment in UAC's favor and against Ms. Nicholson for punitive or exemplary damages for her willful and malicious conduct;

f) a Permanent Injunction enjoining and restraining Ms. Nicholson and her respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with her, from disparaging UAC or otherwise posting defamatory statements about it;

g) that the Court issue an Order at the conclusion of the present matter directing Ms. Nicholson and her respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Ms. Nicholson, to remove, delete, or otherwise disable such posts, and to undertake such remedial efforts as the Court deems necessary to restore UAC's reputation;

h) attorneys' fees and costs as permitted by law; and

i) such other relief as the Court deems appropriate.

Dated: May 5, 2025

>  */s/ Malcolm J. Ingram*
> Malcolm J. Ingram, Bar No. 323201
> mjingram@littler.com
> LITTLER MENDELSON, P.C.
> Three Parkway, 1601 Cherry Street
> Suite 1400
> Philadelphia, Pennsylvania 19102.1321
> Telephone:   267.402.3000
> Facsimile:   267.402.3131
>
> Attorneys for Plaintiff
> Urban Affairs Coalition

## **VERIFICATION**

  I, Arun Prabhakaran, hereby certify as follows:

1. I am the President of Urban Affairs Coalition ("UAC"). As such, I am authorized to make this Verification on behalf of UAC.

2. I have read the attached Verified Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues, the factual allegations contained in the Verified Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed On: May 2, 2025

                _____
                Arun Prabhakaran

# EXHIBIT A

## Jacques Latoison

| | |
|---|---|
| **From:** | Markxx ConsultingLLC <markxxconsultingllc@gmail.com> |
| **Sent:** | Wednesday, November 3, 2021 11:54 PM |
| **To:** | Jacques Latoison |
| **Subject:** | Re: Onboarding |
| **Attachments:** | 2021 NDA (Collaboration)(7042278.1) - Signed.pdf; 2021 NDA (Contractor) - Signed.pdf; W9-MX-2012-11-03.pdf; DriversLicense.png |

Attached are the signed documents.
Also included is my W9.

Mailing Address:
MarkXX Consulting LLC
2729 Burton St SE
Warren, OH 44484


Mailing Address:
MarkXX Consulting LLC
2729 Burton St SE
Warren, OH 44484

ACH (Direct Deposit)
Huntington Bank
MarkXX Consulting LLC
Account Number: ▓▓▓▓▓▓▓▓
Routing Number: ▓▓▓▓▓▓▓▓


My driver's license is still from PA.  With covid season is still in full swing in my area, I stay home. People in my area do not mask up and the majority are unvaccinated.  OH extended Real ID for 18 more months, hopefully, I can get my OH license when the Delta variant subsides and I get my booster.

I am excited to start our first project tomorrow.  One of the databases that I did for Libman was their timesheet system, so I have a good basis for development.

Thank you.

On Wed, Nov 3, 2021 at 6:09 PM Jacques Latoison <JLatoison@thehierarchy.net> wrote:

> Here you go.
>
> Didn't actually attach the files.

Jacques Latoison
**THE HIERARCHY**

---

**From:** Jacques Latoison
**Sent:** Wednesday, November 3, 2021 6:08 PM
**To:** 'Markxx ConsultingLLC' <markxxconsultingllc@gmail.com>
**Subject:** Onboarding

Hey Karen,

Attached are two documents that need signing.
Both are contractor specific NDAs for onboarding.

Please sign and send back.

Thank you

Jacques Latoison
**THE HIERARCHY**

2