IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| URBAN AFFAIRS COALITION, ET AL.<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>KAREN NICHOLSON<br><br>　　　　　　　Defendant. | Civil Action No. 2: 25-cv-02261 |

# FIRST AMENDED COMPLAINT

Plaintiffs Urban Affairs Coalition ("UAC"), Sharmain Matlock-Turner, Arun Prabhakaran, and Kevin Satterthwaite hereby file the above-captioned action against Defendant Karen Nicholson ("Defendant" or "Ms. Nicholson"), and state:

## PARTIES

1.　UAC is a Philadelphia, PA 501(c)(3) with a principal place of business in Philadelphia, Pennsylvania.

2.　Karen Nicholson is an adult individual residing at 2729 Burton Street, Warren, OH, 44484.

3.　Sharmain Matlock-Turner is an adult individual residing in Philadelphia, PA. She is also UAC's CEO.

4.　Arun Prabhakaran is an adult individual residing in Philadelphia, PA. He is also UAC's President.

5.　Kevin Satterthwaite is an adult individual residing in Philadelphia, PA. He is also UAC's SVP of Business Services.

## JURISDICTION AND VENUE

6.　Jurisdiction is proper in this District because there is complete diversity between the parties and the amount-in-controversy requirement is established. 28 U.S.C. § 1332.

1

7. The amount-in-controversy exceeds $75,000. As further discussed below, UAC seeks injunctive relief, costs, expenses, and incidental and consequential damages.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District, and because Defendant is subject to the Court's personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

9. UAC is dedicated to uniting government, business, neighborhoods, and individual initiatives to improve the quality of life in the region, build wealth in urban communities, and solve emerging issues.

10. UAC operates the Economic Development Projects ("EDP") program through which it partners with developers and owners including hospitals, universities, and museums, to create Economic Opportunity Plans ("EOP").

11. UAC's EOPs help its clients award contracts to the most qualified businesses, and assist its clients in successfully employing marginalized employees who are often overlooked.

12. UAC also serves as a fiscal sponsor for numerous partner organizations ("program partners") located within Philadelphia and its surrounding counties.

13. As a fiscal sponsor, UAC provides its program partners with comprehensive general management, financial, administrative, and human resources support.

## UAC's Trade Secrets

14. Because of the competitive industry in which UAC operates, UAC closely guards its confidential and proprietary information.

15. UAC has achieved, and will continue to maintain, its present competitive advantage by preserving the confidential and proprietary nature of its trade secrets and confidential information

including its proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information, pricing and profitability information.

16. UAC has taken and continues to take great care to maintain the confidential and trade secret nature of such information by retaining an experienced IT management company, The Hierarchy.

17. The Hierarchy specializes in professional IT services, and offers a broad range of services including IT project management, network and systems integration, cloud services, and IT security.

18. UAC limits access to its confidential information to those with a business need to access it, and requires the employees and contractors its grants access to its confidential information to sign confidentiality agreements.

19. If UAC's confidential and proprietary information were to become available to a competitor or become public knowledge, UAC's competitive advantage and the substantial investment made by UAC in developing and maintaining its trade secrets and confidential information would be irreparably injured and/or destroyed.

## UAC's Data Migration

20. From January 2009 through September 2021, UAC hosted its confidential and proprietary information on its secure servers located at 1207 Chestnut Street, Philadelphia, PA.

21. The confidential and proprietary information included UAC's EDP contracts and proposals, contracts with program partners and third parties, and its payroll systems. It also included the names and banking information of UAC's employees, program partners, sponsors, and donors.

22. In October 2021, UAC decided it wanted to move away from hosting its confidential and proprietary information on secure servers located on site, to hosting this confidential and proprietary information in a NetSuite cloud.

23. UAC made this decision because hosting its confidential and proprietary information in a NetSuite cloud provided greater security than physically hosting this data at 1207 Chestnut Street, Philadelphia, PA.

24. To complete this data migration, UAC hired The Hierarchy, an experienced IT company.

### The Hierarchy Retained Ms. Nicholson to Assist with UAC's Data Migration

25. The Hierarchy then retained Defendant Karen Nicholson as a Structured Query Language ("SQL") Professional in early-November 2021, to assist with this project.

26. The Hierarchy and Ms. Nicholson agreed she would work for the Hierarchy as an independent contractor on a temporary basis until The Hierarchy completed UAC's data migration.

27. To ensure UAC's confidential and proprietary information remained protected and Ms. Nicholson did not misappropriate it, The Hierarchy made Ms. Nicholson sign a non-disclosure/confidentiality agreement before granting her access to UAC's confidential and proprietary information.

28. This confidentiality agreement required Ms. Nicholson to keep UAC's confidential and proprietary information confidential, not share it with third parties, and not download or keep this information once her work with The Hierarchy ended.

29. On November 3, 2021, Ms. Nicholson signed and returned The Hierarchy's non-disclosure/confidentiality agreement, via email. She also provided The Hierarchy with her W-9[1],

---

[1] A W-9 form is completed by an independent contractor for a business and provided to that business for their records. Employers use W-9 forms to complete form 1099, which details the compensation an employer pays an independent contractor.

4

a copy of her driver's license, and her banking information. *See* Nicholson's November 21, 2021 email, attached as Ex. A.

30. Shortly thereafter, The Hierarchy granted Ms. Nicholson access to UAC's confidential and proprietary information.

**Ms. Nicholson Keeps UAC's Confidential and Proprietary Information**

31. Ms. Nicholson worked for The Hierarchy on UAC's data migration from November 2021, until The Hierarchy ended her contract in early-August 2023.

32. As part of Ms. Nicholson's termination, The Hierarchy disabled her access to UAC's confidential and proprietary information, and reminded her of her ongoing obligations under the non-disclosure/confidentiality agreement she signed in November 2021.

33. Despite this reminder, Ms. Nicholson kept UAC's confidential and proprietary information in direct violation of the terms of her non-disclosure/confidentiality agreement.[2]

34. Ms. Nicholson accomplished this by downloading a copy of UAC's confidential and proprietary information to her computer in violation of her non-disclosure/confidentiality agreement.

35. Ms. Nicholson refuses to return UAC's confidential and proprietary information despite UAC requesting she return this information.

**Ms. Nicholson Does Not Sue The Hierarchy After Receiving Dismissal Notice**

36. In September 2023, Ms. Nicholson filed a Charge of Discrimination ("Charge") against The Hierarchy with the Equal Employment Opportunity Commission ("EEOC").

---

[2] UAC did not discover this until Ms. Nicholson published its trade secrets in early-2025.

37. Ms. Nicholson's Charge alleged The Hierarchy subjected her to retaliation, reverse race, sex, and disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").

38. On February 14, 2024, the EEOC dismissed Ms. Nicholson's Charge after concluding it could not substantiate her claims.

39. The EEOC's February 14 Dismissal Notice instructed Ms. Nicholson and her counsel that Ms. Nicholson had ninety days from February 14, 2024, to file a lawsuit against The Hierarchy in federal court.

40. Ms. Nicholson declined to file a lawsuit against The Hierarchy in federal court.

**Ms. Nicholson Files an EEOC Charge Against UAC After the EEOC Dismissed Her Charge Against The Hierarchy**

41. Instead, she filed a Charge against UAC with the EEOC despite UAC never being her employer.

42. This Charge alleged UAC subjected her to retaliation, reverse race discrimination, age discrimination, and gender discrimination in violation of Title VII and Age Discrimination in Employment Act ("ADEA").

43. On August 21, 2024, the EEOC dismissed Ms. Nicholson's Charge against UAC concluding it could not substantiate her claims.

44. Like the February 14 Dismissal Notice, the EEOC's August 21 Dismissal Notice instructed Ms. Nicholson and her counsel that Ms. Nicholson had ninety days from August 21, 2024, to file a lawsuit against UAC in federal court.

45. Ms. Nicholson did not file a lawsuit against UAC in federal court.

46. Rather, she began a public smear campaign of UAC.

**Ms. Nicholson Admits She Misappropriated UAC's Trade Secrets**

47. In January 2025, Ms. Nicholson published a website entitled https://the-hierarchy.net.

48. Ms. Nicholson is the sole owner and operator of this website.

49. In March 2025, Ms. Nicholson inadvertently admitted she misappropriated UAC's confidential and proprietary information in two ways.

50. First, she admitted on her website that she kept over 1,000 emails from UAC management. *See* March 28, 2025 snippet from Ms. Nicholson's website below.[3]

> I have over 1,000 emails from UAC management tracking this and a plethora of other issues since 2/2023. For God's sake, my missing paycheck should be the least of UAC's worries.

51. Second, she published numerous snippets[4] of UAC's confidential and proprietary information on her website. Examples of the confidential and proprietary information Ms. Nicholson posted snippets of include current EDP business plans, pricing and profitability information, strategies for new services and expansion, proposals, and payroll records.

52. Despite receiving notification that UAC discovered Ms. Nicholson's misappropriation of its confidential and proprietary information, Ms. Nicholson refuses to allow a forensic examination of her computer and electronic data storage devices and cloud accounts to remove UAC's information.

---

[3] To track and monitor the trade secrets Ms. Nicholson posts on her website, UAC is backing up her site. This snippet is from a March 28, 2025 backup of her https://the-hierarchy.net site.
[4] To protect the confidentiality of UAC confidential and proprietary information, UAC is not posting these snippets in this Complaint.

53. The retention of UAC's confidential and proprietary information in the hands of Ms. Nicholson will cause irreparable injury to UAC. This information, in the hands of a competitor, would cause extensive economic and business injury to UAC.

54. The harm to UAC caused by Ms. Nicholson's conduct includes the misappropriation, misuse, and disclosure of UAC's confidential and proprietary information and the impairment of and interference with UAC's relations with its program partners and clients.

### Ms. Nicholson Publishes Blatantly False Statements About UAC

55. Ms. Nicholson also disregarded the truth and published numerous false statements about UAC and its senior leadership team on her website in March and April 2025.

56. For example, in March 2025, Ms. Nicholson falsely claimed "in [her] opinion,[5] UAC may be complicit in facilitating alleged tax and alleged welfare fraud." *See* March 28, 2025 snippets from Ms. Nicholson's website below.[6]

> In my opinion, UAC may be complicit in facilitating alleged tax and alleged welfare fraud. The Philadelphia County Assistance Office (CAO) requires all income be

> **OFFICE SPACE-INSPIRED FRAUD**
>
> **How to make $120K a year to process one person's timesheets**
>
> Jacques Latoison has allegedly been padding timesheets for the past twenty years. The City of Philadelphia, UAC, and Infinite Economic Development Solutions are allegedly complicit, as they are aware of the Hierarchy's alleged fraudulent DEI timesheet padding and continue to support Latoison.

---

[5] UAC believes Ms. Nicholson conveniently uses the phrase "in my opinion" in hopes of making this statement appear as if it is non-actionable opinion. Despite this phrase, Ms. Nicholson's statement is actionable because it is a mixed opinion based on undisclosed facts.
[6] The snippets below are from a March 28 backup of Ms. Nicholson's site.

57. In April 2025, Ms. Nicholson continued to publish factually inaccurate defamatory statements about UAC targeting its senior leadership team.

58. For example, Ms. Nicholson claimed UAC's Chief Administrative Officer Kevin Satterthwaite allowed a con artist to bill for hours he never worked, and participated in this con artist's theft. *See* April 2025 Snippet from Karen Nicholson's website below.[7]

> Kevin Satterthwaite must be held accountable for his failure to protect taxpayer money from a known tax cheat to whom he irresponsibly entrusted unrestricted funds. For ten (10) years, he allowed this con artist to bill for hours that were never worked. When confronted with evidence that Latoison had stolen paychecks, Satterthwaite deflected blame, effectively endorsing the fraudster through his alleged inaction. Furthermore, Satterthwaite allegedly participated in the theft of services by endorsing not paying for mission-critical databases commissioned by UAC EDP during its fake criminal investigation.

59. Ms. Nicholson also falsely claimed UAC's President Arun Prabhakaran allowed The Hierarchy to embezzle taxpayers' funds. *See* April 2025 Snippet from Karen Nicholson's website below.

> Arun Prabhakaran makes documentaries about Philadelphia crime.
> In my opinion, it *seems* Arun might have **allowed** his IT vendor to allegedly embezzle taxpayer funds. Unless:

---

[7] The snippets below are from a April 24 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

60. Finally, Ms. Nicholson published a meme of UAC's Chief Executive Officer Sharmain Matlock-Turner falsely claiming she could explain how to get paid for ghost hours and steal paychecks. *See* April 2025 Snippet from Karen Nicholson's website below.



**Ms. Nicholson Publishes Blatantly False Statements About UAC In Response To It's Initial Complaint**

61. On May 5, 2025, UAC filed its initial Complaint against Ms. Nicholson.

62. After Ms. Nicholson reviewed UAC's Complaint, she posted a redacted snippet of Paragraphs 81-84 on her website. *See* May 6, 2025 snippet below.[8]

---

[8] The snippets below are from a May 6 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

10

> I am highly offended, too. We know you did not want anyone else to know what is going on inside at UAC.
>
> 81. ▇▇▇▇▇▇ published written statements, viewed by numerous people, indicate UAC and its senior leadership team allowed its IT vendor to embezzle taxpayers' funds, were complicit in fraud, received payments for hours no one worked, and stole paychecks.
>
> 83. UAC found these statements highly offensive because they were false and unfair, and did not wish for anyone to view them.
>
> 84. UAC has suffered damages as a result of ▇▇▇▇▇▇ publication, including loss of credibility as a nonprofit, embarrassment, and humiliation.

63. Ms. Nicholson also published additional defamatory statements about UAC.

64. As an example, on May 14, 2025, Ms. Nicholson falsely claimed UAC hires convicted murderers and child molesters. *See* May 14, 2025 snippet below.[9]

> UAC hires convicted murderers and convicted child molesters who work with the public, so no big surprise.

65. She also falsely claimed UAC is showing nonprofits how to pull off the perfect white-collar crime. *See* May 14, 2025 snippet below.

> UAC is teaching nonprofit vendors nationwide a master class in how to pull off the perfect white-collar crime. Arun Prabhakaran and Sharmain Matlock-Turner claim zero responsibility.

66. The following day Ms. Nicholson baselessly claimed on a page of her website entitled "Double-Billing Scam" that UAC was involved in a double billing scam where UAC Executive Project Manager Carlos Jones simultaneously worked for the City of Philadelphia and UAC. *See* May 15, 2025 snippet below.[10]

---

[9] The snippets below are from a May 14 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

[10] The snippets below are from a May 15 backup of Ms. Nicholson's site. They remain on her site as of the date of this filing.

> We now have confirmation that Carlos Jones was a City of Philadelphia FTE from 2014 to 2024. Jones was recorded as working 9-5 at the city and entered hours as a UAC Program "Program Partner" in the EDP (IEDS) timesheet system. He posed as a UAC EDP executive, but UAC paid his private, for-profit company, Infinite Economic Development Solutions, for his hours.

67. Then, on May 17, 2025, Ms. Nicholson posted a snippet of an edited version of an August 7, 2023 email she sent an UAC employee. Ms. Nicholson posted this email to make it appear as if Carlos Jones gave her permission to download UAC's confidential and proprietary information to her computer, which never occurred. *Compare* Ms. Nicholson's May 15, 2025 edited August 7, 2023 email snippet[11] below *with* the authentic unedited version of this email below.

(Edited version)

---

[11] In the edited version, Ms. Nicholson redacted her name in the "From" section and Vanessa Cheeseborough's name in the "To" section.

> **From:** Karen Nicholson <KNicholson@THEHIERARCHY.NET>
> **Sent:** Monday, August 7, 2023 5:16 AM
> **To:** Vanessa Cheeseborough <VCheeseborough@uac.org>
> **Cc:** Carlos Jones <CJones@uac.org>
> **Subject:** Re: Having Issues Logging In This AM
>
> Even stranger is that my Ring Central was just disabled.
>
> I have the #CC database downloaded locally so I can just keep working on the local copy.
>
> Thanks!
>
> Karen Nicholson
> THE HIERARCHY
>
> **From:** Karen Nicholson
> **Sent:** Monday, August 7, 2023 4:59:01 AM
> **To:** Vanessa Cheeseborough
> **Cc:** Carlos Jones
> **Subject:** Having Issues Logging In This AM
>
> I am trying to get your database ready this AM and I am getting some weird message that I am no longer a USER but I still have email. I will let you know when I can get the reports done.
> TY
>
> Karen Nicholson
> THE HIERARCHY

(Authentic version)

68. None of Ms. Nicholson's statements concerning UAC, its senior leadership, and its trade secrets are true.

## COUNT I
## MISSAPROPRIATION OF TRADE SECRETS
## UAC vs. Ms. Nicholson
## Pennsylvania Uniform Trade Secrets Act

69. Plaintiffs incorporate by reference the preceding paragraphs of their Verified Complaint.

70. Ms. Nicholson took UAC's trade secrets and confidential and proprietary information while performing work on the UAC data migration project.

71. She maintains this information in her possession, custody, and control, and refuses to return it.

72. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

73. By the conduct described above, Ms. Nicholson is engaging in the actual or threatened misappropriation in violation of the Pennsylvania Uniform Trade Secrets Act. 12. Pa. C.S. § 5301 *et seq*.

74. UAC has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Ms. Nicholson is enjoined as requested below.

75. Greater injury will be inflicted on UAC by the denial of this relief than will be inflicted on Ms. Nicholson by the granting of this relief.

76. Ms. Nicholson's actions were intentional, willful, outrageous, malicious, and justify the imposition of exemplary damages.

**COUNT II**
**MISSAPROPRIATION OF TRADE SECRETS**
**UAC vs. Ms. Nicholson**
<u>**Defend Trade Secrets Act**</u>

77. Plaintiffs incorporate by reference the preceding paragraphs of their Verified Complaint.

78. Ms. Nicholson took UAC's trade secrets and confidential and proprietary information while performing work on the UAC data migration project.

79. She maintains this information in her possession, custody, and control, and refuses to return it.

80. Such information derives independent economic value by not being generally known, and not being readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

81. By the conduct described above, Ms. Nicholson is engaging in the actual or threatened misappropriation in violation of the Defend Trade Secrets Act. 18. U.S.C. § 1831, *et seq.*

82. UAC has no adequate remedy at law and would suffer substantial and immediate irreparable harm unless Ms. Nicholson is enjoined as requested below.

83. Greater injury will be inflicted on UAC by the denial of this relief than will be inflicted on Ms. Nicholson by the granting of this relief.

84. Ms. Nicholson's actions were intentional, willful, outrageous, malicious, and justify the imposition of exemplary damages.

**COUNT III**
**Plaintiffs vs. Ms. Nicholson**
**Defamation *Per Se***

85. Plaintiffs incorporate by reference the preceding paragraphs of their Verified Complaint.

86. Ms. Nicholson's website published numerous false and defamatory *per se*, statements of fact about UAC to the world.

87. Ms. Nicholson's false and defamatory statements were made with actual malice, that is with knowledge of the falsity of the statements or with reckless disregard for the truth.

88. Ms. Nicholson's false statements of fact were and are undoubtedly understood by any recipients of the statements to be defamatory in nature as they tend to harm the reputation of UAC, lower it in the estimation of the community, denigrate UAC's current and prospective employees, and other third parties with which UAC does or may engage in business, from engaging with it.

89. Ms. Nicholson had no conditionally privileged occasion on which she was permitted to make such defamatory statements.

90. As a result of Ms. Nicholson's false and defamatory statements of fact made with actual malice, UAC has, and will continue to, suffer damages, including reputational harm and loss of good will, in additional to attorneys' fees and costs. For example, a likely consequence is that, in a competitive labor market, UAC may be erroneously viewed as a nonprofit that embezzles or allows its vendors to embezzle funds, and a nonprofit that treats its vendors' subcontractors unfairly and dishonestly.

## COUNT IV
## Plaintiffs vs. Ms. Nicholson
## False Light Invasion of Privacy

91. Plaintiffs incorporate by reference the preceding paragraphs of their Verified Complaint.

92. Ms. Nicholson's March and April 2025 posts on her website invaded UAC's privacy by publicly placing it in a false light.

93. Ms. Nicholson's published written statements, viewed by numerous people, indicate UAC and its senior leadership team allowed its IT vendor to embezzle taxpayers' funds, were complicit in fraud, received payments for hours no one worked, and stole paychecks.

94. Ms. Nicholson had knowledge of and/or acted in reckless disregard for, the falsity of her publications and the false light in which her publications placed UAC and its senior management team.

95. Plaintiffs found these statements highly offensive because they were false and unfair, and did not wish for anyone to view them.

96. Plaintiffs have suffered damages as a result of Ms. Nicholson's publication, including loss of credibility, embarrassment, and humiliation.

## COUNT V
## UAC vs. Ms. Nicholson
## CONVERSION

97. Plaintiffs incorporate by reference the preceding paragraphs of their Verified Complaint.

98. At all times, UAC retained all right, title, and interest in the trade secrets, confidential and proprietary information discussed above, which is UAC's property.

99. Ms. Nicholson has knowingly, dishonestly, and intentionally used UAC's trade secrets, confidential information, and other UAC property without authorization.

100.  Ms. Nicholson has failed to return and cease use of and/or refused UAC's demands to return and cease use of the trade secrets and other UAC confidential information and property she illegally took from it.

101.  As a direct and proximate result of Ms. Nicholson's conduct, UAC has suffered damages.

102.  Ms. Nicholson's actions have been willful and outrageous and undertaken with reckless indifference to UAC's rights.

WHEREFORE, UAC requests the following relief:

a) Ms. Nicholson, and all other persons or entities acting in concert with her or on her behalf, be temporarily, preliminarily, and permanently enjoined from using, retaining, or otherwise interfering with UAC's possession and control of its property, including any trade secrets, confidential information, or other intellectual property;

b) Ms. Nicholson, and all other persons or entities acting in concert with her or on her behalf, be temporarily, preliminarily, and permanently enjoined from directly or indirectly using, disclosing, or retaining any trade secrets or confidential and proprietary information of UAC;

c) Ms. Nicholson be ordered to produce for examination and remediation all her computers, electronic data storage devices, and cloud accounts and to cooperate in the return of UAC's information and remediation of her misappropriation;

d) A judgment in UAC's favor and against Ms. Nicholson for monetary damages in an amount in excess of $150,000, including all amounts necessary to compensate UAC for Ms. Nicholson's wrongful activities including reasonable attorneys' fees and costs for her willful misconduct;

e) a judgment in UAC's favor and against Ms. Nicholson for punitive or exemplary damages for her willful and malicious conduct;

f)	a Permanent Injunction enjoining and restraining Ms. Nicholson and her respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with her, from disparaging UAC or otherwise posting defamatory statements about it;

g)	that the Court issue an Order at the conclusion of the present matter directing Ms. Nicholson and her respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Ms. Nicholson, to remove, delete, or otherwise disable such posts, and to undertake such remedial efforts as the Court deems necessary to restore UAC's reputation;

h)	attorneys' fees and costs as permitted by law; and

i)	such other relief as the Court deems appropriate.

Dated: June 13, 2025

*/s/ Malcolm J. Ingram*
Malcolm J. Ingram, Bar No. 323201
mjingram@littler.com
Tanner McCarron, Bar No. 327855
Tmcarron@littler.com
LITTLER MENDELSON, P.C.
Three Parkway, 1601 Cherry Street
Suite 1400
Philadelphia, Pennsylvania 19102.1321
Telephone:   267.402.3000
Facsimile:   267.402.3131

Attorneys for Plaintiffs

**VERIFICATION**

I, Arun Prabhakaran, hereby certify as follows:

1. I am the President of Urban Affairs Coalition ("UAC"). As such, I am authorized to make this Verification on behalf of UAC.

2. I have read the attached Verified First Amended Complaint and based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues, the factual allegations contained in the Verified First Amended Complaint are true.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed On: June 13, 2025

_____
Arun Prabhakaran