# EXHIBIT C

# IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

E-STAFF CONSULTING GROUP, INC ,

      Plaintiff,

  vs

KAREN S. REYNOLDS,

      Defendant.

CIVIL DIVISION

NO  2016-1852

## **AMENDED COMPLAINT IN EQUITY-INJUNCTION**

Filed on Behalf of Plaintiff

Counsel of Record for this Party

Adam S  Ennis
Pa I D  No  71999

Eric W  Santos
Pa I D  No  70477

Steptoe & Johnson PLLC
11 Grandview Circle, Suite 200
Canonsburg, PA  15317
724-749-3100

FILED

2016 JUN 27  PM 3 57

PROTHONOTARY
WASHINGTON CO  PA

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

E-STAFF CONSULTING GROUP, INC ,          CIVIL DIVISION

        Plaintiff,          NO  2016-1852

  vs

KAREN S  REYNOLDS,

      Defendant

### <u>NOTICE</u>

You have been sued in Court   If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Amended Complaint In Equity-Injunction and Notice are served by entering a written appearance personally or by attorney and filing, in writing, with the Court your defenses or objections to the claims set forth against you   You are warned that if you fail to do so, the case may proceed without further notice for any money claimed in this Amended Complaint In Equity-Injunction or for any other claim or relief requested by the Plaintiff.   You may lose money or property or other rights important to you.

### YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.

### IF YOU DO NOT HAVE A LAWYER, CONTACT:

        Lawyer Referral Service
        523 Washington Trust Building
        Washington, PA 15301
        Telephone·  (724) 225-6710

### IF YOU CANNOT AFFORD A LAWYER, CONTACT:

        Southwestern Pennsylvania Legal Aid Society
        16 West Cherry Avenue
        Washington, PA 15301
        Telephone  (724) 225-6710

# IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

E-STAFF CONSULTING GROUP, INC ,     CIVIL DIVISION

        Plaintiff,             NO  2016-1852

   vs

KAREN S  REYNOLDS,

       Defendant

## AMENDED COMPLAINT IN EQUITY-INJUNCTION

Plaintiff, e-STAFF Consulting Group, Inc , by its attorneys, files this Amended Complaint In Equity-Injunction, and in support thereof alleges as follows

    1     This is an action for trademark infringement arising under Pennsylvania common law, breach of contract and misappropriation of confidential and proprietary information

    2     Plaintiff e-STAFF Consulting Group, Inc ("e-STAFF") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 600 Davidson Road, Pittsburgh, PA 15239

    3.     Defendant Karen S  Reynolds ("Reynolds") is an adult individual with a principal place of residence at 103 Clearview Drive, McMurray, Pennsylvania 15317 who also does business as MarkXX Consulting LLC ("MarkXX")

## JURISDICTION AND VENUE

    4     Jurisdiction is proper pursuant to 42 Pa C S A. §5301  Venue in Washington County is proper pursuant to Pa R C P  1006(a)(1)

    5     This Court has jurisdiction to grant preliminary injunctive relief in this arbitral dispute  See, *Langston v  Nat'l Media Corp* , 420 Pa  Super  611, 618, 617 A 2d 354, 358 (1992)

## FACTS

    6     Reynolds worked with e-STAFF as an independent contractor

7       On or about February 1, 2016, e-STAFF placed Reynolds with the Pittsburgh Water and Sewer Authority ("PWSA") to work on a project as a data analyst and report developer

8.      On February 3, 2016, Reynolds, doing business as MarkXX, signed an independent contractor agreement ("Contractor Agreement") with e-STAFF to serve as an independent contractor to PWSA

9       On March 17, 2016 a representative of the PWSA contacted e-STAFF and informed it that they uncovered egregious errors committed by Reynolds in her role as a data analyst and report developer during her assignment at PWSA

10      On or about March 17, 2016, Reynolds was terminated from her assignment at the PWSA

11.     Thereafter, Reynolds began a series of retaliatory acts in an effort to tarnish the business reputations of the PWSA and e-STAFF

12      Specifically, on or about March 24, 2016, Reynolds created a Facebook page using a confusingly similar logo and name to that of e-STAFF  The URL for Reynolds' page is located at "www facebook.com/estaffconsultingpittsburgh com "

13      As depicted below, e-STAFF's actual logo, featured on both e-STAFF's official, registered website (www estaffconsulting.com) as well as its Facebook page (www.facebook com/eStaff IT recruiting) contains an orange city skyline surrounded by an orange triangle  In front of the triangular skyline is the word "e-STAFF" in black boldface type font. Below the triangle are the words "CONSULTING GROUP, INC " in black boldface type font



14      Reynolds' Facebook page confuses the marketplace by suggesting that it is an e-STAFF sponsored website  The page is titled "EStaff Consulting Pittsburgh " *See* Exhibits A-C  As depicted below, the page features a logo that is strikingly similar to that of e-STAFF's logo  an identical orange skyline surrounded by an orange triangle  The word "eSTAFF" is printed in front of the triangle in black bold face type font  Below the triangle are the words "ESTAFFPITTSBURGHCONSULTING COM" in black boldface type font



3

15      The Reynolds webpage features text stating "Not Paying Contractors When Clients Pay Us We have A Great Game Going On Like Us On Facebook Visit Us at estaffconsultingPittsburgh com" It also invites users to a fake website she calls "estaffpittsburghconsulting com," buttressing the false impression that her Facebook page containing the confusingly similar e-STAFF logo is sponsored by e-STAFF *See* Exhibit B

16.      The Reynolds webpage also features posts containing the actual e-STAFF Consulting Facebook page Such images further confuse the marketplace *See* Exhibits D and E

17      The logo and website used by Reynolds were designed to cause confusion and mistake, or to deceive the public into believing that this Facebook page, images, and websites are affiliated with, related to, sponsored by or connected with e-STAFF

18      Counsel for e-STAFF sent a cease and desist letter to Reynolds on March 24, 2016 demanding that Reynolds immediately refrain from using "estaffconsultingpittsburgh com" and e-Staff's logos *See* Exhibit F

19      Reynolds has ignored the March 24 cease and desist letter, continuing to use the e-STAFF logo and advertise on "estaffconsultingpittsburgh.com" website.

20.      Reynolds' use of the logo and website are causing irreparable harm to e-STAFF.

21      The February 3, 2016, Contractor Agreement, Section 6 titled Confidential Information, states that

> All information (pertaining to any of [PWSA's] inventions, designs, tools, equipment, unpublished written materials, plans, processes, costs, methods, systems, improvements, or other private or confidential matters) that is obtained by [Contractor] in the performance of [Contractor's] work and that is not publicly disclosed by [PWSA] shall be considered as confidential and proprietary to [e-STAFF] or to [PWSA] who supplies or provides such information. The terms of [Contractor's] assignment including [Contractor's] compensation and the assignment terms of [e-STAFF's] other employees or independent consultants within

4

[PWSA] organization of the assignment shall be considered confidential [Contractor] shall not at any time during or after such assignment, disclose such information or the nature of the service that [Contractor] rendered to [PWSA], except to authorized representative of [e-STAFF] or [PWSA] The foregoing provision in this Paragraph [6] shall be for the benefit of [e-STAFF] and [PWSA], and either or both shall have all rights and remedies to enforce such provisions

*See* Exhibit G, Section 6

22    The Contractor Agreement also provided that "[i]f [e-STAFF] is successful in recovering damages or obtaining injunctive relief, [Contractor] agrees to be responsible for paying all of [e-STAFF's] expenses in seeking such relief, including all costs of bringing suit and all reasonable attorneys' fees " *See* Exhibit G, Section 13

23    PWSA provided Reynolds with a laptop computer to conduct her work remotely from home

24    Reynolds had access to confidential and proprietary information, including financial transactions, customer information, billing procedures, of PWSA and e-STAFF in her role as a data analyst and report developer

25.    On March 17, the date Reynolds was terminated from her assignment, the PWSA and e-STAFF spoke with Reynolds and requested the return of PWSA's laptop computer, to which Reynolds refused.

26    It is believed and therefore averred that Reynolds wrongfully copied confidential and proprietary information of PWSA and e-STAFF to her personal device(s)

27.    On or about March 18, 2016 Reynolds contacted the PWSA and threatened to contact vendors and the media regarding confidential and proprietary information

28.     On March 19, 2016 Reynolds contacted a vendor for PWSA and disclosed confidential information of PWSA and e-STAFF, made defamatory remarks regarding PWSA's billing systems, and defamatory comments about the actions of PWSA staff

29     On March 19 and 21, 2016 counsel for Plaintiff contacted Reynolds via telephone requesting the return of PWSA's laptop and demanding that she cease all threats to disclose confidential information  Reynolds claimed that the laptop was stolen from her unlocked car in her driveway and that she reported the theft to the Peters Township Police Department

30.     Following these phone conversations, counsel for Plaintiff sent a letter on March 21, 2016 to Reynolds memorializing their conversation and again requesting the return of the laptop and demanding that she cease all threats regarding the disclosure of confidential PWSA information. *See* Exhibit H.

31.     On or about March 21, 2006, Reynolds sent two pictures via email to PWSA, one depicting a KDKA news vehicle on a road and another depicting Reynolds sitting at a table with another individual along with a laptop  Attached hereto is a copy of the photos labeled *See* Exhibit I

32     It is believed and therefore averred that Reynolds sent this email as a threat to PWSA; that the laptop in the picture was the stolen laptop belonging to PWSA, that Reynolds disclosed PWSA's confidential information to KDKA, and that Reynolds made defamatory remarks about PWSA's business to KDKA

33     On or about May 2, 2016, the South Fayette Police Department called e-STAFF informing them that someone associated with Reynolds came into the station with a laptop and stated that the laptop belonged to e-STAFF and/or the PWSA

34     On or about May 10, 2016, Reynolds mistakenly called counsel for PWSA and stated that, for financial compensation, she would provide information she obtained while working for PWSA to assist the plaintiffs in a class action lawsuit pending against PWSA  Upon realizing that she contacted counsel for PWSA and not counsel for the plaintiffs in the class action, Reynolds then offered to provide PWSA with information to assist with the defense of the case  When asked what information she possessed, Reynolds responded that she downloaded information from the laptop provided by the PWSA onto her personal laptop

35     On May 10, 2016, Reynolds sent an email to a third party indicating that the software, which PWSA uses to bill customers, is in "extremely poor condition" and "catastrophic" and inflates PWSA bills to customers. *See* Exhibit J

36.     On June 2, 2016, Reynolds, pretending to be others making postings, posted defamatory remarks about e-STAFF and/or PWSA on the Steel City Vets Facebook page and on e-STAFF'S web page  This prompted the Steel City Vets Facebook page owner to voice his concerns to e-STAFF about such defamatory remarks  *See* Exhibits K and L.

37     On or about June 6, 2016, Reynolds posted on her Facebook page associated with her infringing website "estaffconsultingpittsburgh com" more defamatory remarks about e-STAFF and stated "take this  It is porn time" directed to e-STAFF. In the attempt to mislead the trade or public, or individual members thereof,  that the same are somehow sponsored, endorsed, connected with, approved or authorized by e-STAFF Consulting Group, Inc , Reynolds referred viewers to the fact that "estaffconsultingpittsburgh com" is now "starwhores com" (a pornography website) and that her new website is "PTSDVictimOfEstaff com" *See* Exhibit M

38     Reynolds is currently subject to a preliminary injunction that prevents Reynolds from using confusingly similar websites and logos to that of e-STAFF

39.     As of June 9, 2016, Reynolds is in violation of the Court's Orders dated April 6, 2016 and April 15, 2016, granting and extending the preliminary injunction, as she either still maintains a website EStaffConsultingPittsburgh com and/or refers users on her Facebook page to a new website she calls "starwhores com" giving the false impression that "starwhores com" is sponsored by e-STAFF.

40     On Reynolds' infringing website "estaffconsultingpittsburgh com" Reynolds posted company emails and other corporate information, including emails involving e-STAFF's customer PWSA, all of which are confidential information under the Contractor Agreement

## COUNT I

### (Trademark Infringement under Pennsylvania Common Law)

41.     Paragraphs 1- 40 are incorporated as if fully set forth herein.

42     e-STAFF has a legal right to the exclusive use of its trade name.

43.     The e-STAFF trademarks are inherently distinctive or have otherwise acquired distinctiveness as a result of long-time, exclusive use, advertising and promotion

44.     Reynolds' use of e-STAFF's name and logo create the likelihood that the public, clients, and potential clients will be confused into mistakenly believing that Reynolds' use of the e-STAFF name and logo is in some manner associated with or sponsored by e-STAFF

45     Reynolds' conduct described herein has violated and infringed e-STAFF's common law rights to the e-STAFF trademarks.

46     Reynolds' trademark infringement is intentional and willful

47     Reynolds lacks any meritorious defense for the infringement upon e-STAFF's trademarks

8

48    Reynolds' trademark infringement has damaged e-STAFF, and unless enjoined, will continue to irreparably damage the reputation and goodwill associated with e-STAFF's trademarks  e-STAFF has no adequate remedy at law

## COUNT II

### (Breach of Contract)

49    Paragraphs 1-48 are incorporated as if fully set forth herein

50    e-STAFF and Reynolds entered into the Contractor Agreement for Reynolds to provide consulting services to PWSA

51.    The Contractor Agreement contained a confidentiality provision preventing Reynolds from misappropriating any confidential or proprietary information of e-STAFF or PWSA  *See* Exhibit G, Section 6

52.    Reynolds breached that duty when Reynolds·

a    Wrongfully withheld PWSA property,

b    Copied confidential and proprietary information from the laptop provided to her by PWSA,

c    Spoke with vendors of PWSA and disclosed confidential and proprietary information,

d    Spoke with KDKA and disclosed PWSA's confidential and proprietary information;

e    Solicited services to counsel for a class action lawsuit against the city of Pittsburgh to use misappropriated PWSA confidential and proprietary information,

f.     Solicited services to third parties to use misappropriated PWSA confidential and proprietary information, and

g     Posted confidential e-STAFF corporate communications, including some communications with its customer PWSA, on her website EStaffConsultingPittsburgh.com

53     As a result of Reynolds' breach, e-STAFF and PWSA have suffered damages to their reputation and goodwill and unless enjoined, will continue to be irreparably damaged Therefore, e-STAFF has no adequate remedy at law for Reynolds' breach

## COUNT III

### (Misappropriation of Confidential and Proprietary Information)

54     Paragraphs 1-53 are incorporated as if fully set forth herein

55     e-STAFF and Reynolds entered into the Contractor Agreement for Defendant to provide consulting services to PWSA

56.     The Contractor Agreement signed by Reynolds, doing business as MarkXX, contained a confidentiality provision preventing Reynolds, doing business as MarkXX from misappropriating any confidential or proprietary information of e-STAFF or PWSA *See* Exhibit G Section 6.

57     This confidential and proprietary information of e-STAFF and PWSA were developed at great expense and effort, and have been essential to the success of e-STAFF and PWSA

58     Reynolds wrongfully copied and downloaded confidential and proprietary information of PWSA and e-STAFF to Reynolds' own personal device(s), including Reynolds' personal laptop

59     Important examples of such confidential and proprietary information wrongfully copied, downloaded an posted by Reynolds are Reynolds' contracts, corporate emails and copies of e-STAFF's timecard system, communications involving e-STAFF, including emails involving its customer PWSA, and the billing policies/procedures/software applications of PWSA and e-STAFF

60     Reynolds in violation of the confidentiality provision of the Contractor Agreement continues to engage in retaliatory acts intended to tarnish the business reputation of e-STAFF and PWSA by publishing and disclosing the confidential and proprietary information of e-STAFF and PWSA on social media, including Reynolds' confusingly similar website EStaffConsultingPittsburgh.com and the Facebook page associated with Reynolds' fake website and by publishing and disclosing the same to third parties, including PWSA's vendors and media sources, such as KDKA

61.     Reynolds has misappropriated confidential and proprietary information without authority.

62     The appropriation and use of the confidential and proprietary information by Reynolds has been willful and malicious

63     As a result of Reynolds' misappropriation of confidential and proprietary information, e-STAFF and PWSA have suffered damages to their reputation and goodwill and unless enjoined, will continue to be irreparably damaged  Therefore, e-STAFF has no adequate remedy at law for Reynolds' misappropriation of confidential and proprietary information

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff e-STAFF Consulting Group, Inc  requests the Court grant the following relief

a) Grant a preliminary and thereafter a permanent injunction restraining and enjoining Defendant Karen S Reynolds individually and all those in privity, concert, participation or affiliation with Defendant Karen S. Reynolds, including MarkXX Consulting LLC, from

     i     Imitating, copying, duplicating or otherwise making any use of the e-STAFF Consulting Group, Inc trademarks, including the logo and company name, or any mark confusingly similar to the e-STAFF Consulting Group Inc trademarks

     ii.    Manufacturing, producing, distributing, or otherwise making any use of the marks or company name owned by e-STAFF Consulting Group Inc. or any mark confusingly similar to those marks,

     iii.   Using any unauthorized copy or colorable imitations of the e-STAFF trademarks or company name in such fashion as is likely to falsely relate or connect Defendant Karen S Reynolds with e-STAFF Consulting Group Inc ,

     iv    Using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any service or product advertised, promoted, offered or sold by Karen S Reynolds is sponsored, endorsed, connected with, approved or authorized by e-STAFF Consulting Group Inc ,

     v    Engaging in any other activity constituting infringement of e-STAFF Consulting Group Inc 's trademarks or rights in, or to use, or to exploit the same,

b) Find that Defendant Karen S Reynolds has infringed the e-STAFF Consulting Group Inc trademarks and company name as depicted in Paragraph 13 above in violation of the common law of trademark infringement of the Commonwealth of Pennsylvania,

c) Order Defendant Karen S. Reynolds to remove the infringing logos and company names from the Facebook page created;

d) Grant a preliminary and thereafter a permanent injunction retraining and enjoining Defendant Karen S Reynolds individually and all those in privity, concert, participation or affiliation with Defendant Karen S. Reynolds, including MarkXX Consulting LLC, from communicating, copying, transferring, publishing or disclosing or disseminating any confidential or proprietary information, as defined in the Contractor Agreement, of the PWSA and the e-STAFF Consulting Group, Inc ,

e) Order Defendant Karen S. Reynolds and all those in privity, concert, participation or affiliation with Defendant Karen S Reynolds, including MarkXX Consulting LLC, to destroy all confidential and proprietary information of the PWSA and e-STAFF in their possession,

f) Order that, pending arbitration, all of the personal devices, including personal laptops, of Defendant Karen S Reynolds and all those in privity, concert, participation or affiliation with Defendant Karen S Reynolds, including MarkXX Consulting LLC, be seized to allow removal of confidential information of the PWSA and e-STAFF,

g) Order that pending arbitration, Plaintiff is permitted to hire a computer forensic expert to perform computer forensic acquisition and analysis of the violating data on the personal devices of Defendant Karen S. Reynolds and those who are in privity,

13

concert, participation or affiliation with Defendant Karen S Reynolds, including MarkXX Consulting LLC,

h) Order Defendant Karen S Reynolds and all those in privity, concert, participation or affiliation with Defendant Karen S. Reynolds, including MarkXX Consulting LLC, to take down the website EStaffConsultingPittsburgh com and all websites which are likely to lead the trade or public, or individual members thereof, to mistakenly believe that any service or product advertised, promoted, offered or sold by Karen S Reynolds is sponsored, endorsed, connected with, approved or authorized by e-STAFF Consulting Group Inc.; and,

i) Award attorneys' fees and costs associated with this matter to Plaintiff in accordance with the Contractor Agreement, and

j) Award Plaintiff such relief as this Honorable Court deems just and proper.

Respectfully submitted,

*Eric W Santos*

Adam S. Ennis, Pa I D No 71999
Eric W. Santos, Pa I D No 70477
STEPTOE & JOHNSON PLLC
11 Grandview Circle, Suite 200
Canonsburg, PA 15317
(724) 873-3180 (phone)
(724) 873-3143 (fax)

Attorneys For Plaintiff
e-STAFF Consulting Group, Inc

14



🔍 EStaff Consulting Pittsburgh

PAYING CONTRACTORS WHEN CLIENTS
WE HAVE A GREAT GAME GOING O

## EStaff Consulting Pittsburgh
Community

 Like     Message     Save    ●●● More

 6 people like this

 Invite friends to like this Page

## About    ›

For the citizens of Pittsburgh.  You paid a data scientist to fix your water bills.  The staffing firm stole your money.

 Call (412) 304-8330



EXHIBIT
A

 News Feed     Requests     Messenger     Notifications    More



Q   EStaff Consulting Pittsburgh

POSTS BY PAGE

 **EStaff Consulting Pittsburgh** ⌄
Sunday at 7:09 PM · 🌐

My phone number is 412-304-8330.  So I am not their first victim?  You are inside, let's make this right before other people can't feed their family.  I can see you are coming from E-Staff.

👍 Like     💬 Comment     ↪ Share

 **EStaff Consulting Pittsburgh** updated their cover photo. ⌄
March 24 at 7:13 AM · 🌐

**NOT PAYING  CONTRACTORS WHEN CLIENTS PAY US
WE HAVE A GREAT GAME GOING ON**

**LIKE US ON FACEBOOK, VISIT US AT
ESTAFFCONSULTINGPITTSBURGH.COM**

🟢 Cindy L Collins

👍 Like     💬 Comment     ↪ Share

 **EStaff Consulting Pittsburgh** updated
their cover photo.

EXHIBIT
B


📰 News Feed     👥 Requests     💬 Messenger     🌐 Notifications     More

Case 2:25-cv-02261-AB   Document 14-3   Filed 08/28/25   Page 20 of 41



●●●○○ Sprint 📶   4:49 PM   ↗ ⏱ 20% ▮ ⚡

🔍 EStaff Consulting Pittsburgh

👍 Like    💬 Comment    ↪ Share

 **EStaff Consulting Pittsburgh** updated their profile picture.
March 24 at 6:59 AM · 🌐



# eSTAFF

**ESTAFFPITTSBURGHCONSULTING.COM**

 Like     Comment    ↪ Share

**2016**


EXHIBIT
C


News Feed


Requests


Messenger


Notifications


More



**EStaff Consulting Pittsburgh**

Friday at 3:22 AM · 🌐

Will the real e-staff, please stand up and tell me where my paycheck is.  At least they told Wendy Bell why she was fired, but no one stole her last pay for 3 weeks.



e-Staff Consulting Group, Inc.
Recruiter

Timeline    About    Photos    **Reviews**    More ▾

4.0 ★  4.0 of 5 stars
4 reviews

MOST HELPFUL    MOST RECENT    STAR RATING

5 stars ▭▭▭▭▭▭ 3
4 stars
3 stars
2 stars
1 star ▭▭ 1

Karen Reynolds reviewed e-Staff Consulting Group, Inc. — ⭐
March 24 at 10:51am · 🌐▾

This company was paid by the city of Pittsburgh to pay me to fix their water bills. They city of Pittsburgh paid them. They won't pay me. Really? They fired me because I would not sign a lifetime contract. Watch out.

👍 Like    💬 Comment    ↗ Share

👍 **Like**          💬 **Comment**          ↗ **Share**

Be the first person to like this.

📷   Write a comment...                                    ☺



EXHIBIT
D

📰          👥          🌐          🌐          🌐
News Feed    Requests    Messenger    Notifications    More



●●●○○ Sprint    9:29 AM    ⬆ ⏱ ✻ 36% 🔋

‹    🔍    e-Staff Consulting Group, Inc.    👤☰

# e-Staff Consulting Group, Inc.
Recruiter

**CALL NOW >**



👍 **Like**    💬 **Message**    🔖 **Save**    ●●● **More**

👥 175 people like this

📋 Open · 8:00AM - 5:00PM
Get additional info

👤 Invite friends to like this Page

✿ ✿ ✿



**About**

EXHIBIT
2

📰 **News Feed**    👥 **Requests**    💬 **Messenger**    🌐 **Notifications**    ☰ **More**



| | |
|---|---|
| 11 Grandview Circle | Writer's Contact Information |
| Suite 200 | |
| Canonsburg, PA 15317 | martin.saunders@steptoe-johnson.com |
| (724) 873-3140   (724) 873-3143 Fax | 724-873-3176 |
| www.steptoe-johnson.com | |

March 24, 2016

Ms Karen S. Reynolds
103 Clearview Dr
McMurray, PA 15317
karensreynolds@gmail.com

Re:   e-STAFF Consulting Group, Inc.

Dear Ms. Reynolds (a.k.a. Long):

This is the second time I have been required to write to you this week because of your actions regarding e-STAFF Consulting Group, Inc.

You are immediately to cease all forms of communication with e-STAFF Consulting Group, Inc., and any of its employees. This specifically includes, but is not limited to, e-mails and Facebook posts, communication with Ian Coyle, and posts on e-STAFF's Facebook page.

Additionally, it appears that you purposefully have created a deceptive domain name, estaffconsultingpittsburgh.com, with the intent to confuse that domain name with e-STAFF Consulting Group, Inc.'s legitimate domain name, estaffconsulting.com. I'm sure you realize that a web search of your domain name leads only to e-STAFF's site. This is a transparent attempt to replicate its logo, website and otherwise interfere with its legitimate business interests. If you persist in this conduct, e-STAFF will take all necessary actions to protect its business interests, as well as bring the matter to the attention of the appropriate authorities. Based on our research, it appears that you have engaged in this type of activity on a previous occasion with resulting adverse consequences.

Finally, I would note that you still have failed to return Pittsburgh Water and Sewage Authority's computer or make arrangements for its return.

Again, I would strongly recommend that you have your attorney contact me so that these matters may be brought to a conclusion.

7144799 1



West Virginia • Ohio • Kentucky • Pennsylvania • Texas • Colorado

March 24, 2016
Page 2

Very truly yours,

Martin J. Saunders

MJS/kml

cc:    Susie Dietrich, e-STAFF Consulting Group, Inc.
       Kelley Benson, Pittsburgh Water and Sewer Authority
       Cami L. Davis, Esq., Clark Hill

7144799 1

## AGREEMENT FOR SUPPLYING INDEPENDENT CONTRACTORS

This is an Agreement ("Agreement") made as of this , by and between e-STAFF Consulting Group, Inc. with its principal place of business at 600 Davidson Road Pittsburgh, Pa 15239 (hereinafter referred to as "Company") and MarkXX Consulting, LLC with its principal place of business located at 103 Clearview Drive McMurray, PA 15317 (hereinafter referred to as "Contractor").

WHEREAS, Contractor provides services to the general public in an independent capacity; WHEREAS, Company is in the business of brokering the services of independent contractors to third parties, and WHEREAS, Contractor desires to utilize the services of Company for the location and brokering of work to be performed by Contractor,

NOW, THEREFORE, it is agreed as follows·

1. **Scope of Services**

   Contractor agrees, pursuant to the terms herein, to provide specialized services as an independent contractor directly to third party direct recipients of those services ("Recipient"), who have engaged Company to locate and place service providers capable of performing to Recipient's requirements. The Scope of Services and Recipient are further defined on the Purchase Order/SOW/Agreement/SOW/Agreement, which is made a part of this Agreement and incorporated by reference as if fully set forth   Company agrees to act as an intermediary between Contractor and Recipient by evaluating Contractors' qualifications, referring Contractor for assignment and further evaluation, and to negotiate the financial arrangements between the parties

   **Duration** Unless terminated for cause, Contractor's services under this Agreement will begin and terminate pursuant to the period covered by the Purchase Order/SOW/Agreement and any renewals or extensions thereof. Contractor may not voluntarily terminate its services under this Agreement before the end of the assignment covered by the Purchase Order/SOW/Agreement and any renewal or extension thereof without the consent of Recipient.

   The Company at any time, without prior notice to the Contractor, may terminate this Agreement for cause  For purpose of this Agreement "cause" means any act or omission by the Contractor which constitutes dishonesty, breach of this Agreement or the failure or inability of the Contractor to perform its responsibilities required by the Purchase Order/SOW/Agreement for any reason, the failure or inability of the Contractor to manage its business and direct its workforce to the satisfaction of the Company and/or Recipient, or the failure or inability to account for hours worked to the satisfaction of the Company and/or Recipient, or the commission by the Contractor of an act of moral turpitude which has or could have an adverse effect upon the Company, the Recipient or their businesses

   If Contractor does not complete the assignment for any reason, including the termination of the Agreement for cause, then Contractor shall be liable to Company for all damages the Company incurred, including lost fees, commissions, or other compensation for the duration of the assignment



EXHIBIT
G

2. **Restrictions**

   During the term of this Agreement and any extension and/or renewals thereof, and for a period of 18 months after the expiration of the initial and extended and/or renewal periods, Contractor agrees that neither it nor any of its personnel will provide or attempt to provide, directly or indirectly, any services to any Recipient introduced by Company, or about which Company provided information  The term "Recipient" includes any affiliates and divisions of a Recipient.   Contractor agrees to provide Company with evidence of its employees' agreement to this provision upon request.  During the term of this Agreement, and any extension or renewals thereof and for a period of 18 months thereafter, Contractor shall also be prohibited from soliciting, hiring, or referring in any capacity, any employees or affiliated Independent Consultants of the Company or its parent corporation or any affiliates, subsidiaries or divisions thereof without prior written consent of the Company

3. **Contractor Representations**

   Contractor represents that all information provided by it, including, but not limited to, the résumé, interview, and references are true, accurate, and complete; Contractor is not restricted by any employment or other contractual agreement, it has all skills, tools and equipment and training necessary to perform the services required by this Agreement and any Purchase Order/SOW/Agreement, and Contractor has and maintains books and records that reflect items of income and expenses of its trade or business and offers its services to third parties. Contractor makes these representations with the knowledge that Company and Recipient will rely on these representations. In addition to any other remedies Company may have, it may terminate this Agreement in the event of any misstatement or misrepresentation

4. **Payment Terms**

   Payment for services for hours actually worked will be made in accordance with the Purchase Order/SOW/Agreement. Contractor will not be entitled to any other compensation or benefits for work on the assignment. Contractor will maintain accurate records of its personnel's time spent on the assignment and obtain Recipient's written verification of time spent  Contractor shall invoice Company for its services performed on the periodic basis set forth in the Purchase Order/SOW/Agreement  Contractor acknowledges and agrees that its is not an employee entitled to wages or benefits and that Company and Recipient shall not be responsible to make or remit any payroll deductions, such as FICA, workers' compensation, or state unemployment insurance, or to provide any benefits such as vacation or holidays, pension, disability, or retirement benefits

   Company will separately invoice Recipient and will be entitled to retain its commission for the brokerage, location, recruitment, and administrative services provided under this Agreement.

   Company may advance funds to Contractor prior to receiving funds from Recipient as an accommodation to Contractor  In that event, if Company does not receive funds from Recipient that cover all charges set forth in Contractor's invoice to Company for which such advance was made, then Contractor shall reimburse Company an amount equal to any advances made by Company to Contractor which were not paid by Recipient  Such repayment of advances shall be due immediately upon written demand delivered to Contractor

5. **Expenses**
   No travel, living, training, entertainment, or other costs will be billed by or paid to Contractor unless otherwise agreed. Contractor shall provide its own tools, equipment, or other materials for performance of the services required by the Purchase Order/SOW/Agreement

6. **Confidential Information**
   All information (pertaining to any of Recipient's inventions, designs, tools, equipment, unpublished written materials, plans, processes, costs, methods, systems, improvements, or other private or confidential matters) that is obtained by Contractor in the performance of Contractor's work and that is not publicly disclosed by Recipient shall be considered as confidential and proprietary to Company or to Recipient who supplies or provides such information. The terms of Contractor's assignment including Contractor's compensation and the assignment terms of the Company's other employees or independent consultants within Recipient organization, and the scope and location within Recipient organization of the assignment shall be considered confidential. Contractor shall not at any time during or after such assignment, disclose such information or the nature of the service that Contractor rendered to Recipient, except to authorized representative of Company or Recipient. The foregoing provision in this Paragraph 7 shall be for the benefit of Company and Recipient, and either or both shall have all rights and remedies to enforce such provisions

7. **Relationship of the Parties**
   The parties to this Agreement agree that the relationship created by this Agreement is that of BROKER–INDEPENDENT CONTRACTOR and that no employer–employee or principal/agent relationship by or among Contractor, Company, and/or Recipient is intended by any party

8. **Contractor's Employees**
   It shall be Contractor's responsibility to provide workers' compensation insurance, if applicable, to pay any premium or overtime rate for its employees who work on the project covered by this Agreement and Purchase Order/SOW/Agreement, to make required FICA, FUTA, and income tax withholding or other payments related to such employees, and to provide Company with suitable evidence of the same whenever requested. In the event of any claims brought or threatened by any party against Company or Recipient relating to the status, acts, or omissions of Contractor or its personnel, Contractor agrees to cooperate in all reasonable respects, including to support the assertions of Contractor's status made in this Agreement and to indemnify, defend and hold harmless the Company and/or Recipient against all such claims. In this regard, it is specifically agreed that the Company and/or Recipient each may select their own counsel to defend them in any such action. Contractor further agrees to file all necessary income tax reports and forms on a timely basis and make all payments due to the appropriate taxing authority

9. **Right to Supervise**
   Contractor shall utilize its own independent judgment and discretion in the performance of the work required by the Purchase Order/SOW/Agreement without supervision or right to supervise or control as to the means and manner of performance including time, location, sequencing of performance and direction and control of Contractor's employees by either the Company or Recipient.

10. **Service to Others**
    Contractor may provide services to others during the term of this Agreement provided that the provision of such services does not interfere with its obligations and performance hereunder

**11. Risk of Loss**

Contractor hereby releases Company from any liability relating to representations about the tasks, requirements or to the conditions under which Contractor will be working. Contractor respresents that it has thoroughly reviewed the Purchase Order/SOW/Agreement and that it shall be solely responsible and liable for the services it provides hereunder and will not look to Company or Recipient for any indemnification or sharing of risk in the performance of its duties or the resulting work product.

**12. Insurance**

In addition to any other insurance required by this Agreement, Contractor will obtain for itself and its personnel before providing services, at its own expense, comprehensive general liability insurance coverage for projects covered by this Agreement, with limits of liability and terms satisfactory to Company in an amount not less than 1 million USD (one million USD)   A certificate of such insurance, which shall name the Company and Recipient as co-insured's, shall be furnished to Company within five (5) days of the date of this Agreement  Contractor further agrees to indemnify, defend and hold Company and/or Recipient harmless from any and all liability or expense that Company and/or Recipient may incur by reason of bodily injury to any person, or property damage, or both, caused in whole or in part by the acts of Contractor, its agents, servants, and employees while performing work or services pursuant to this Agreement, including reasonable attorneys' fees Contractor agrees to indemnify Company and/or Recipient against any amounts Company and/or Recipient may ultimately have to pay due to Contractor's failure to timely file tax returns or information, or pay the proper amount of wages or income taxes and related payroll costs to any appropriate taxing authority

**13. Cost of Suits**

If Company is successful in recovering damages or obtaining injunctive relief, Contractor agrees to be responsible for paying all of Company's expenses in seeking such relief, including all costs of bringing suit and all reasonable attorneys' fees

**14. Entire Agreement**

This Agreement and any attachments or exhibits hereto represent the entire agreement and understanding of the parties and any modification thereof shall not be effective unless contained in writing and signed by both parties. Any prior verbal or written agreements have been merged into this Agreement  Agreements between Company and Recipient shall not modify or amend any terms of this Agreement unless signed by both Company and Contractor

**15. Severability**

Each provision of the Agreement shall be considered severable such that if any one provision of a clause conflicts with existing or future applicable law, or may not be given full effect because of such law, this shall not affect any other provision of the Agreement that can be given effect without the conflicting provision of clause

**16. Right to Assign**

Contractor is to provide services through its personnel named in the Purchase Order/SOW/Agreement, for whom it is responsible, and may not assign its rights under this Agreement or any Purchase Order/SOW/Agreement and may not subcontract its obligations hereunder to others.

The Company may assign this Agreement.

## 17. Conflicts

To the extent that there may be any conflict between the terms of this Agreement and any Purchase Order/SOW/Agreement that may be given hereto, this Agreement shall take precedence

## 18. State Law

This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania

## 19  Dispute Resolution

Contractor and the Company agree that the sole and exclusive remedy for any alleged breach of this Agreement and/or related Purchase Order/SOW/Agreement by the other, or for any other dispute arising out of any act or omission of Contractor or the Company affecting, involving or relating to this Agreement or its application or interpretation, shall be final and binding arbitration conducted by and pursuant to the Rules of the American Arbitration Association in Allegheny County, Pennsylvania  The Contractor and the Company expressly waive venue in any other county or state in which they live or might reside and/or the right to bring any claim in any court or other form

Before demanding arbitration, the party making the demand shall serve written notice upon the other Party of the alleged breach or claim. Such written notice must be served by hand delivery or by being placed in the U S  Mail, postage pre-paid, return receipt requested, or with an overnight mail delivery service, not more than ninety (90) days after the breach or after the claim arises. Failure timely to serve such notice shall constitute a waiver of the claim. The party upon whom the notice is served shall have thirty (30) days from the date of receipt of the notice to respond. If the party upon whom the notice is served fails to respond within that time, or if the claim is not resolved within that time, the party seeking arbitration must serve a demand for arbitration upon the American Arbitration Association within fourteen (14) days  Failure timely to serve the demand shall constitute a waiver of the claim

The prevailing party in any such arbitration proceeding, as determined by the arbitrator, shall be entitled to an award of its reasonable attorneys' fees and costs, including the full cost of the arbitration

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement as of the day and year first above written

| Company Name/Date | Contractor Name/Date |
| --- | --- |
| Digitally signed by Peggy Diewald<br>Location  peggy@topsjobs com<br>02/03/2016 03 11 00 PM -05 00 | Digitally signed by MarkXX Consulting LLC<br>Location  karensreynolds@gmail com<br>02/03/2016 02 31 27 PM -05 00 |

*Independent Contractor Summary Agreement between Company & Recipient*

Contractor Name   MarkXX Consulting LLC MarkXX Consulting LLC

Contractor Federal Identification Number   68-0673651

Contractor Address   103 Clearview Drive  McMurray, PA 15317

Place of Assignment   Pittsburgh, PA

Estimated Start Date   02/01/2016

Estimated End Date   02/01/2017

Rate of Pay _____ $40 00

Digitally signed by Peggy Diewald
Location  peggy@topsjobs com
02/03/2016 03 11 45 PM -05 00

Signature Company

Digitally signed by MarkXX Consulting LLC
Location  karensreynolds@gmail com
02/03/2016 02 32 21 PM -05 00

Signature Independent Contractor



| | |
|---|---|
| 11 Grandview Circle | Writer's Contact Information |
| Suite 200 | |
| Canonsburg, PA 15317 | martin saunders@steptoe johnson.com |
| (724) 873-3140    (724) 873-3143 Fax | 724 873-3176 |
| www.steptoe-johnson com | |

March 21, 2016

Ms Karen S Reynolds
103 Clearview Dr
McMurray, PA 15317
karensreynolds@gmail.com

           Re·    e-STAFF Consulting Group, Inc. and Pittsburgh Water and Sewer
Authority

Dear Ms. Reynolds:

       This letter will confirm our telephone conversations of Saturday, March 19 and Monday,
March 21, 2016

       During those two conversations, I discussed with you the following:

1   You took home from your assignment with the Pittsburgh Water and Sewer Authority a
computer belonging to the Authority (HP EliteBook 850 G1, serial· CNU4279C76) and,
upon being informed of your termination of that assignment, have refused to return the
computer to the Authority To facilitate resolution of this issue, I offered to have a
messenger from my office come to your home on Monday to accept return of the
computer. You replied that you no longer had possession of the computer, that, since you
live in Peter's Township, you park in your driveway with your car unlocked, keys inside
the car, and that the computer was stolen from your car. You also claimed to have made a
report of that theft to the Peter's Township Police Department and that a Peter's
Township Police Officer came to your home and told you Peter's Township could do
nothing since you did not own the computer. I replied that I would contact the Peter's
Township Police Department to determine if and when you made any such report and any
action taken by the Department Additionally, I reiterated that if the computer was
located I would be willing to take possession of it and return it to the Authority

2   The Authority has advised e-STAFF that you have threatened to contact its vendors and
the media I reminded you that Paragraph 6 of your Agreement with e-STAFF prohibits
you from taking this action For various reasons, you disagreed I then advised you that it
would be in everyone's best interest for you to return the computer, comply with your

7141336 1



West Virginia • Ohio • Kentucky • Pennsylvania • Texas • Colorado

March 21, 2016
Page 2

Agreement, and move on to your next assignment.

I further informed you that, if you persisted in your present conduct, e-STAFF would take appropriate action to enforce its rights under your Agreement, which could result in litigation either in Allegheny or Washington County Courts of Common Pleas;

Your Agreement with e-STAFF, Paragraph 12, requires you to maintain general liability insurance. You provided e-STAFF with a certificate of insurance from Martin Insurance Group. I would suggest that you submit a claim for the alleged missing computer to your general liability carrier.

Subsequently, you have called 412-613-8505 on several occasions and hung up. Under no circumstances are you to call that number at any time in the future for any reason. I would suggest that you have your attorney contact me at 724-873-3176

Very truly yours,

Martin J. Saunders

MJS/kml

cc:    Susie Dietrich, e-STAFF Consulting Group, Inc.
       Kelley Benson, Pittsburgh Water and Sewer Authority
       Cami L. Davis, Esq., Clark Hill

7141336 1



From: Karen Reynolds <karensreynolds@gmail.com<mailto:karensreynolds@gmail.com>>
Date: Tuesday, May 10, 2016 at 5:30 PM
To: Bryce Cooper <bcooper@harriscomputer.com<mailto:bcooper@harriscomputer com>>, Jamal Baksh
<jbaksh@csisoftware com<mailto:jbaksh@csisoftware com>>
Subject Cogsdale SQL Backend Problem

It was a pleasure speaking with you, Mr Baksh. My intent is to inform you that, as we all know, the Cogsdale SQL back-
end is in extremely poor condition. Quite simply:

1. Very few unique identifiers (akin to a social security number) 2, Not one clustered index. (more than one field can
define a record as unique) 3. Not one constraint. (reasonable acceptance of for instance, a billing date)

As we speak, an attorney named John Corcoran has in motion a huge class action lawsuit against the city of Pittsburgh
water and sewage authority. (PWSA)

Cogsdale software is catastrophic  It is allowing PWSA to fire off bills that are all inflated by 10% to 376,000 residents
since 2014.

It has actually allowed the entire area called Millvale, consisting of 11,000 residents, to not receive a water/sewage bill
for six months because your system defaults all dates to 1/1/1900, and a data entry clerk did not put in a "to be billed
date", and no bills were issued for 6 months.

Cogsdale software has allowed the entire City of Wilkinsburg to pay their "sewage service only" bill through a 3rd party,
who then gives PWSA the check, and PWSA is to then give that money to ALCOSAN, the place that cleans the water.
Your software has allowed that money to "vanish"  26 million dollars. No check to ALCOSAN for two years.

Cogsdale allows three types of estimates, estimated bills  In 2014, estimated bills started going off the rails. PWSA now
owes around $14 million in refunds for over estimated bills

This is just a little glimpse of my laundry list.

Attorney Corcoran was to hire me as arsenal against PWSA. He apparently golfs too much, and is not responding quickly
enough to me. So I called his opponent
My contention CAN BE Cogsdale is a known defective weapon that was bound to discharge, and then we can sue
Cogsdale, the root cause of the problem.

You need to show due diligence. I am informing you that Cogsdale is defective  I can fix the back-end in short order. I
am a whole lot less expensive than a 29 million dollar lawsuit.

Please contact me, and dovetail your legal department in on the correspondence, please  Trust me, I am far more
talented and seasoned than the three Cogsdale "representatives" that I watched, in amusement, for two days just trying
to figure out a leading zero problem. They are inept

I don't even want to go down that street. It took me 10 minutes to create a data dictionary that did not exist, and there
isn't even a user manual  Unbelievable. And one more warning shot - you are rolling out upgrades, releases, to your
product without regression testing. Regression testing means: Yes, I fixed "this" ticket number or problem. Oh no, it
just broke 9 other things that used to work.

1

EXHIBIT

J

I am very easy to work with. You need me before this blows sky high.

Thank you for your time n  As far as I can discern, there are at least 320 clients in America using this defective product.

I look forward to hearing from you.


Karen S  Reynolds, Data Scientist
President
MarkXX Consulting, LLC
412-304-8330
www.MarkXXConsulting.com<http://www.MarkXXConsulting.com>



## Visitor Posts



**Karen Reynolds ~ Steel City Vets (SCV)**

Interesting www.estaffconsultingpittsburgh.com
Anonymous says
June 2, 2016 at 11:44 am (Edit)
E-Staff Consulting stole $10,000 from my company -do. You can do nothing. Their contract only allows you to get your money if you pay $2,200 for arbitration. The arbitration board is paid for 2), the City of Pittsburgh. They bankrupted me too I lost my children. My wife is divorcing me I, too, have PTSD

👍 Like    —   Comment    ↗ Share



### EStaff Consulting Pittsburgh – MarkXXX Consulting

One small crime can make a difference. E-Staff stole my paycheck WFSA is generating inaccurate water bills. This is for the city I love Pittsburgh!

ESTAFFCONSU.... SAYITES AEF-CO .

**Stan Savran ▸ Steel City Vets (SCV)**

Scott thank you for sending the wonderful medal to me. I truly appreciate it and I'm glad we at Root Sports could help. Happy Memorial Day



EXHIBIT

K

Chronological ▾



**Karen Reynolds** Interesting. www.estaffconsultingpittsburgh.com

Anonymous says.

June 2, 2016 at 11:44 am (Edit)

E-Staff Consulting stole $10,000 from my company, too. You can do nothing. Their contract only allows you to get your money if you pay $2,200 for arbitration. The arbitration board is paid for by the City of Pittsburgh. They bankrupted me, too. I lost my children. My wife is divorcing me. I, too, have PTSD The war within

Like · Reply · Message · 24 mins



Write a comment..

Press Enter to post.



**EXHIBIT**



VIDEOS

PHOTOS

http://www.establishmentsofthepast

ABOUT

For the citizens of Pittsburgh scroll but to fi-your wara-talls scale your more.

2 people like this P

Invite friends to like this P

**EXHIBIT**

I

## **VERIFICATION**

I, Susan C. Dietrich, am the President of Plaintiff e-STAFF Consulting Group, Inc., and, as such, I am authorized and do make this Verification on behalf of Plaintiff e-STAFF Consulting Group, Inc., I have read the foregoing Amended Complaint in Equity-Injunction and state that the averments of fact contained therein are true and correct to the best of my knowledge, information and/or belief

I understand that the statements made herein are subject to the penalties of 18 Pa C S § 4904, which relates to unsworn falsification to authorities.

_____
Susan C. Dietrich

Dated _____June 27_____, 2016

7219962

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing Amended

Complaint In Equity-Injunction was served upon defendant by U.S. Mail this 27th day of June,

2016, as follows

Karen S Reynolds
103 Clearview Dr
McMurray, PA 15317

Eric W. Santos



PER ATTY Deft is KAREN S Reynolds not dbA