# EXHIBIT J

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA<br>[X] EEOC | 530-2024-03401 |

__Philadelphia Human Relations Commission__ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Karen Nicholson; markxxxconsultingllc@gmail.com | 614-746-2715 | 7/7/59 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2729 Burton St SE | Warren, OH 44484 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Urban Affairs Coalition | 15+ | (215) 851-0110 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1650 Arch St, Suite 2701 | Philadelphia, PA 19103 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 9/29/21     Latest: 8/7/23

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

See attached,

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

02/12/2024

*Karen Nicholson*
Karen Nicholson (Feb 12, 2024 13:06 EST)

Date / Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

# ARCE LAW GROUP, PC

45 Broadway, Suite 430B
New York, New York 10006
P: 212-248-0120 / F: 212-901-2107

February 12, 2024

U.S. Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107-3127

## CHARGE OF DISCRIMINATION

| | | |
|---|---|---|
| **RE:** | Our Client: | **Karen Nicholson** |
| | Nature of Complaint: | **Race Discrimination, Age Discrimination, Gender Discrimination, Retaliation, and Unlawful Termination** |
| | | **~against~** |
| | | **Urban Affairs Coalition** |

Dear Madam or Sir:

The following is a charge of discrimination on the basis of race, age, and gender, together with retaliation, and unlawful termination that this office is filing on behalf of Ms. Nicholson against Urban Affairs Coalition. **Complainant is also requesting the dual filing of this Charge with the Pennsylvania Human Relations Commission (PHRC)**.

Ms. Nicholson's address, telephone number, and email are:

2729 Burton St SE
Warren, OH 44484
(614)-746-2715
markxxconsulting@gmail.com

The name and address of the business against which the charge is made are:

**Urban Affairs Coalition**
1650 Arch St, Suite 2701
Philadelphia, PA 19103

The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

**A Statement of Facts is as follows:**

1. Complainant is a Caucasian, female resident of the State of Ohio, Trumbull County.

2. At all times material, Respondent URBAN AFFAIRS COALITION UAC (hereinafter "UAC") was and is a domestic non-profit organization duly existing under the laws of the Commonwealth of Pennsylvania.

3. At all times material, Respondent UAC was and is a community services organization which operates an office located at 1650 Arch St, Suite 2701, Philadelphia, PA 19103.

4. At all times material, Respondent UAC was Complainant's employer because although Complainant was paid by "The Hierarchy" (an information technology staffing firm), she performed duties exclusively for Respondent UAC.

5. Significantly, Respondent UAC controlled the terms and conditions of Complainant's employment, trained Complainant on her duties, furnished Complainant tools and materials that were essential to the performance of her job, and assigned Complainant work within the scope of its ordinary course of business.

6. At all times material, Complainant was an employee of Respondent UAC.

## MATERIAL FACTS

7. On or about September 29, 2021, Complainant applied for a remote "Structured Query Language ("SQL") Professional" position on Indeed.com.

8. The following month, Jacques Latoison (African-American), Owner and Founder of "The Hierarchy," contacted Complainant and scheduled her for an interview.

9. Accordingly, on or about November 2, 2021, Complainant interviewed for the SQL Professional position with Mr. Latoison.

2

10. During the interview, Mr. Latoison explained that if hired, Complaint would be staffed and/or assigned to work at Respondent UAC on a full-time basis.

11. Later that day, Mr. Latoison emailed Complainant and offered her the SQL Professional position at Respondent UAC, with an hourly pay rate of $55.

12. Complainant accepted the offer of employment.

13. Thus, on or about November 2, 2021, Complainant began working for Respondent UAC.

14. As a SQL Professional, Complainant was responsible for updating and monitoring Respondent UAC's contract compliance and payrolls systems, and reported directly to Respondent UAC's Executive Project Manager, Carlos Jones.

15. Throughout her employment, Mr. Jones controlled Complainant's schedule and assigned most (if not all) of Complainant's work.

16. Additionally, during her employment, Complainant entered all of her hours worked in Respondent UAC's time sheet system. Once approved, Respondent UAC deposited Complainant's payroll into Mr. Latoison's business account (titled "UAC Payment").

17. Mr. Latoison then issued Complainant a bi-weekly paycheck for her hours worked.

18. Initially, Complainant looked forward to working at Respondent UAC and anticipated a long career with the company.

19. However, later that month, Complainant learned that she was being paid less than her African-American counterparts.

20. Specifically, whereas Complainant was paid $55 per hour, Respondent UAC paid other African-American SQL Professionals contracted through The Hierarchy and Respondent UAC, such as Guy Weston, $250 per hour to perform the same exact work.

21. In fact, David Neal-Latoison, Hakeem Jones, Garron Gibbs, and Yaphet Latoison were also paid more than Complainant.

22. Upon information and belief, Respondent UAC was and is a recipient of government funding that is conditioned upon the organization's utilization of minority-owned businesses (i.e., The Hierarchy), contractors, and subcontractors.

23. As such, Complainant reasonably believed that Respondent UAC sanctioned and/or condoned this discriminatory pay disparity to ensure that it could hire/retain more African-American employees and to satisfy its minority utilization quotas.

24. Therefore, in or around the beginning of December 2021, Complainant contacted Mr. Latoison and asked to be paid the same rate as African-American SQL Professionals at Respondent UAC. However, Mr. Latoison flatly denied Complainant's request.

25. Nevertheless, over the next year, Complainant tried to ignore Respondent UAC's discriminatory pay practices and focus on her duties.

26. However, in or around the beginning of January 2022, as another example of disparate treatment, Mr. Latoison started paying Complainant's one invoice per month.

27. For context, Complainant had been receiving bi-weekly paychecks ever since she started working for Respondent UAC. By contrast, every African-American SQL Professional at Respondent UAC continued to receive their paychecks on a bi-weekly basis during this time.

28. Mr. Latoison then stopped paying Complainant altogether.

29. Specifically, Mr. Latoison failed to pay Complainant's invoices for the weeks of April 14, 2023, April 28, 2023, May 5, 2023, May 12, 2023, May 19, 2023, May 26, 2023, June 2 2023, June 9, 2023, 2023, June 15, 2023, June 23, 2023.

30. Even worse, each time Complainant confronted Mr. Latoison about her unpaid and/or delayed payments, he would excuse and/or justify his actions by telling her that "**minorities need to pay their bills before whites**." Mr. Latoison also made comments claiming that he was entitled to unlawfully withhold her pay as "**reparations**," because banks were apparently denying loans for "blacks." Moreover, Mr. Latoison regularly remarked about "**hating Caucasians**" and would often tell Complainant that she "lacked compassions" for minorities.

31. Mr. Latoison would even make comments about Complainant's age, regularly referred to her as a "*seasoned professional*," and once told her that she was "**old and inflexible**."

32. Furthermore, whereas Mr. Latoison was courteous and patient when working with men, Complainant noticed that he was generally more combative and adversarial when working with women, including herself.

33. Naturally, Complainant was embarrassed and humiliated by Mr. Latoison's conduct.

34. And at this point, based on his blatant refusal to pay her, Complainant reasonably believed that Mr. Latoison's actions were intentional, discriminatory, and that he was embezzling her paychecks for his own personal gain.

35. Therefore, between April 2023 and July 2023, Complainant repeatedly complained to Respondent UAC's Data Management Supervisor, Vanessa B. Cheeseborough, and Executive Project Manager, Mr. Jones, about her unpaid wages. Complainant also complained to Ms. Cheeseborough and Mr. Jones about Mr. Latoison's discriminatory comments.

36. However, each time, Ms. Cheeseborough and Mr. Jones attributed Complainant's non-payment to a "misunderstanding," and minimized Mr. Latoison's discriminatory behavior by telling her that everyone "**kn[ew] [he] [wa]s like this**," and that he had been "**doing this for years**." And unsurprisingly, during one of these conversations, Ms. Cheeseborough admitted

that other women who had previously complained about Mr. Latoison, such as Jennifer Powell-Folks, were ultimately "forced out" of Respondent UAC for doing so.

37. Nevertheless, on or about July 8, 2023, after conceding that Mr. Latoison was failing to pay her, Mr. Jones told Complainant that she "**was a**n [**Respondent UAC] employee anyway**," "*to remain quiet and keep working*," and assured her that Respondent UAC would assume responsibility for her missed payments (by paying her retroactively), and for future payments as well.  Mr. Jones also assured Complainant that he envisioned her working at Respondent UAC for "**years**," and promised to escalate the issue of her non-payment to Respondent UAC's Chief Administrative Officer, Kevin Satterthwaite.

38. Significantly, Mr. Jones's statements confirmed that Respondent UAC had assumed the role of Complainant's employer, and had also assumed responsibility for compensating Complainant for her services.

39. However, despite these assurances, over the next two months, Respondent UAC (like Mr. Latoison) failed to compensate Complainant for her work.

40. Specifically, Respondent UAC failed to pay Complainant for her labor during the weeks of June 30, 2023, July 7, 2023, July 14, 2023, July 21 2023, July 28, 2023, August 4, 2023, and August 7, 2023.

41. Based on the above, Complaint suspected that Respondent UAC was aware of Mr. Latoison's unlawful embezzlement scheme, but turned a "bind eye" because it was either participating in the scheme itself, or because it did not want to jeopardize its government funding or monetary relationship with The Hierarchy.

42. Nevertheless, from July 2023 to August 2023, although she was essentially working for free, Complainant continued satisfactorily performing her duties for Respondent UAC.

43. However, on or about August 7, 2023, shortly after raising another complaint about the non-payment of her wages, Mr. Latoison and Mr. Jones emailed Complainant and terminated her employment with Respondent UAC. Mr. Latoison claimed that Complainant was terminated for refusing to complete an assignment for Respondent UAC's AIDS database.[1]

44. However, Complainant termination was pretext because Complainant did not refuse to complete this assignment. Rather, Complainant raised concerns that she did not have the proper HIPAA authorization to access the sensitive medical information on Respondent UAC's AIDS database. In fact, Mr. Jones specifically told Complainant not to work on the assignment until she received the necessary HIPAA authorization.

45. In reality, Respondent UAC terminated Complainant in retaliation for her complaints of discrimination, and for complaining about the discriminatory/unlawful withholding and/or misappropriation of her wages by Respondent UAC and The Hierarchy.

46. The above are just some of the examples of the harassment that Complainant had to endure while working for Respondent UAC.

47. Respondent UAC condoned and/or ratified Mr. Latoison's unlawful and discriminatory conduct.

48. Respondent UAC's actions were intended to create a hostile work environment that no reasonable person would tolerate.

49. Respondent UAC would not have harassed and discriminated against Complainant but for her race, age, and gender.

50. As a result of Respondent UAC's actions, Complainant felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

---

[1] Respondent UAC's Human Resources department was copied on this email.

51. As a result of Respondent UAC's discriminatory and intolerable treatment of Complainant, she suffered and continues to suffer severe emotional distress and physical ailments.

52. As a result of the acts and conduct complained of herein, Complainant has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53. As Respondent UAC's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Complainant demands Punitive Damages

Very truly yours,
**ARCÉ LAW GROUP, P.C.**

*/s/ Jesse S. Weinstein, Esq.*
Jesse S. Weinstein, Esq.
Max C. Bracero, Esq.
45 Broadway, Suite 430B
New York, NY 10006
(212) 248-0120
j.weinstein@arcelawgroup.com
max.bracero@arcelawgroup.com