## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| URBAN AFFAIRS COALITION, et al., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:25-cv-02261 |
| | : | |
| KAREN NICHOLSON, | : | |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW, this            day of                    , 2025, upon consideration of the

Motion to Dismiss Second Amended Complaint of Defendant Karen Nicholson, and any response

thereto, it is hereby ORDERED AND DECREED that said Motion is GRANTED and the Second

Amended Complaint is hereby DISMISSED WITH PREJUDICE.


BY THE COURT:


**Honorable Anita B. Brody**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| URBAN AFFAIRS COALITION, et al., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:25-cv-02261 |
| | : | |
| KAREN NICHOLSON, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2025, upon consideration of the Motion to Strike Scandalous, Impertinent, and Immaterial Matter of Defendant Karen Nicholson, and any response thereto, it is hereby ORDERED AND DECREED that said Motion is GRANTED. The following Paragraphs in the Second Amended Complaint and Exhibits are hereby STRICKEN: Paragraphs 6, 11 (including photograph of driver's license), 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 50 and Exhibits A, B, C, D, E, EE, F, G, and I (driver's license).

**BY THE COURT:**

_____
**Honorable Anita B. Brody
United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| URBAN AFFAIRS COALITION, et al., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No. 2:25-cv-02261 |
| | : |
| KAREN NICHOLSON, | : |
| | : |
| Defendant. | : |

**DEFENDANT KAREN NICHOLSON'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT, OR ALTERNATIVELY TO STRIKE
IMMATERIAL, SCANDALOUS, AND IMPERTINENT MATTERS**

Defendant Karen Nicholson ("Defendant" or "Nicholson"), by and through her attorneys, appearing specially and without waiver of jurisdiction, hereby files this Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2), or, Alternatively, Rule 12(b)(6). For the reasons set forth in the accompanying Memorandum of Law, this Court lacks personal jurisdiction over Nicholson, who is a resident of Ohio. Alternatively, the Second Amended Complaint fails to set forth claims upon which relief may be granted. Defendant further moves to strike Paragraphs 6, 11 (including photograph of driver's license), 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 50 and Exhibits A, B, C, D, E, EE, F, G, and I (driver's license) as scandalous, impertinent, and immaterial pursuant to Federal Rule of Civil Procedure 12(f).

WHEREFORE, Defendant Karen Nicholson respectfully requests that this Honorable Court grant her Motion to Dismiss, or alternatively, Motion to Strike.

Date:  September 18, 2025                    Respectfully submitted,

**GORDON REES**
**SCULLY MANSUKHANI, LLP**

By:  _/s/ Sara Anderson Frey_
      Sara Anderson Frey [PA 82835]
      1717 Arch Street, Suite 610
      Philadelphia, PA  19103
      (215) 717-4009
      sfrey@grsm.com
      _Counsel for Defendant_

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| URBAN AFFAIRS COALITION, et al., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No. 2:25-cv-02261 |
| | : |
| KAREN NICHOLSON, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KAREN
NICHOLSON'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT, OR ALTERNATIVELY, TO STRIKE SCANDALOUS,
IMPERTINENT, AND IMMATERIAL ALLEGATIONS**

Defendant Karen Nicholson ("Defendant" or "Nicholson"), by and through her attorneys,

appearing specially and without waiver of jurisdiction, hereby files this Memorandum of Law in

Support of her Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Federal Rule

of Civil Procedure 12(b)(2), or, Alternatively, Rule 12(b)(6).  Defendant further moves to strike

scandalous, impertinent, and immaterial allegations pursuant to Federal Rule of Civil Procedure

12(f).

**I.      INTRODUCTION**

Plaintiffs allege that Nicholson misappropriated trade secrets and posted defamatory

statements about Plaintiffs on the internet.  Nicholson moved to dismiss UAC's First Amended

Complaint based on lack of jurisdiction.  In response, Plaintiffs filed their Second Amended

Complaint, replete with vitriolic and scandalous allegations having nothing to do with the

jurisdictional analysis or the underlying claims.  There is no doubt that these allegations, including

an unredacted photograph of Nicholson's expired driver's license (without redaction of her date of

birth as required by Local Rule 5.1.3), were included in an attempt to harass, embarrass, and

intimidate Nicholson.

First, and foremost, this Court lacks personal jurisdiction over Nicholson, who is a resident of Ohio.  She has no continuous and systematic contacts with Pennsylvania sufficient to invoke general personal jurisdiction.  Moreover, she has not purposefully directed any of her activities giving rise to Plaintiffs' claims to Pennsylvania.  To the contrary, all the events giving rise to Plaintiffs' allegations took place in Ohio.  The new allegations contained in the Second Amended Complaint do not change this conclusion.

Second, while Plaintiffs tried to beef up its allegations on the supposed trade secrets misappropriated by Nicholson, it is clear that the information Plaintiffs claim were taken is—*at best*—confidential information.  However, the law is clear that just because information is confidential, that does not mean it is a trade secret.  Third, Plaintiffs' defamation claim is non-actionable because the statements allegedly made by Nicholson are nothing more than opinions.  Fourth, Plaintiffs have failed to set forth a claim of false light invasion of privacy because Plaintiffs fail to allege disclosure of private facts. Finally, Plaintiffs' common law conversion claim is preempted.  For all these reasons, the Second Amended Complaint should be dismissed.

In the event the Court denies the Motion to Dismiss, the improper, scandalous, and impertinent allegations and exhibits should be stricken.

## II.    RELEVANT FACTUAL BACKGROUND

Urban Affair Coalition ("UAC") commenced this action against Nicholson on May 5, 2025.  Dkt. No. 1.  On May 28, 2025, Nicholson agreed to waive service of process.  Dkt. No. 6. On June 13, 2025, UAC filed its First Amended Complaint ("FAC"), adding, among other things, three additional Plaintiffs: Sharmain Matlock-Turner, ("Matlock-Turner"), Arun Prabhakaran

("Prabhakaran"), and Kevin Satterthwaite ("Satterthwaite").[1]    FAC, at ¶¶ 3-5, Dkt. No. 8. Nicholson filed a Motion to Dismiss the FAC, on grounds the Court lacked personal jurisdiction over her, or, alternatively, the FAC failed to state a claim upon which relief may be granted.  On August 28, 2025, Plaintiffs filed a Second Amended Complaint ("SAC").  SAC, Dkt. No. 14.

### A.    Nicholson's Lack of Contacts with Pennsylvania

Nicholson is a resident of Warren, Ohio.  *Id.* at ¶ 5, Dkt. No. 14; Declaration of Karen Nicholson ("Nicholson Decl.") at ¶ 3, attached hereto as Exhibit ("Ex.") A.  She has resided in Ohio since October 2019.  Nicholson Decl. at ¶ 4, Ex. A.  While Nicholson formerly resided in Pennsylvania, she has not had any meaningful contacts with the Commonwealth of Pennsylvania since 2019.  *Id.* at ¶ 5, Ex. A.  She has not visited the Commonwealth of Pennsylvania since October 2019. *Id.* at ¶ 6, Ex. A.  She does not currently own, rent, or maintain property in Pennsylvania and has not since 2019.  *Id.* at ¶ 7, Ex. A.  She does not maintain a mailing address or telephone number in Pennsylvania and has not since 2019.  *Id.* at ¶¶ 8-9, Ex. A.  She does not maintain any bank accounts in Pennsylvania and has not since 2019.  *Id.* at ¶ 10, Ex. A.  She has not paid taxes to the Commonwealth of Pennsylvania since 2018.  *Id.* at ¶ 13, Ex. A.

Nicholson is not registered or licensed to do business in Pennsylvania and has not conducted business operations in Pennsylvania since 2019.  *Id.* at ¶¶ 11-12, Ex. A.  She does not regularly solicit business in Pennsylvania.  Nicholson Decl. at ¶ 15, Ex. A.  She does not have a registered agent for service in Pennsylvania.  *Id*. at ¶ 14, Ex. A.

None of the work that Nicholson performed for The Hierarchy took place in Pennsylvania. *Id.* at ¶ 19, Ex. A.  Nor did she ever travel to Pennsylvania at any time in connection with the work she did for The Hierarchy.  *Id.* at ¶ 20, Ex. A.  All of the work Nicholson did for The Hierarchy

---

[1] UAC, Matlock-Turner, Prabhakaran, and Satterthwaite are collectively referred to as "Plaintiffs."

was done at her home in Warren, Ohio. *Id.* at ¶ 21, Ex. A. Furthermore, the work performed by Nicholson for The Hierarchy was done through MarkXX Consulting LLC, which is an Ohio limited liability company. *Id.* at ¶¶ 17-18, Ex. A.

### B. Allegations Related to UAC's Purported Confidential Information

According to the SAC, UAC is a 501(c)(3) corporation headquartered in Philadelphia, Pennsylvania that is "dedicated to uniting government, business, neighborhoods, and individual initiatives to improve the quality of life in the region, build wealth in urban communities, and solve emergency issues. SAC at ¶¶ 1, 33, Dkt. No. 14. UAC operates Economic Development Projects ("EDP") with developers and owners including hospitals, universities, and museums to create Economic Opportunity Plans ("EOP"). *Id.* at ¶ 34, Dkt. No. 14. The EOPs are used to help UAC's clients award contracts to the most qualified businesses. *Id.* at ¶ 35, Dkt. No. 14.

UAC claims that until September 2021, it hosted confidential and proprietary information on secure servers located in Philadelphia. *Id.* at ¶ 44, Dkt. No. 14. In October 2021, UAC began hosting this alleged confidential and proprietary information in a NetSuite cloud. *Id.* at ¶ 46, Dkt. No. 14. UAC retained an IT company, The Hierarchy, to complete the data migration. *Id.* at ¶ 48, Dkt. No. 14. In November 2021, *after* UAC moved its information from physical servers in Philadelphia to remote cloud servers, UAC alleges that The Hierarchy retained Nicholson to assist in the data migration project. *Id.* at ¶ 49, Dkt. No. 14. UAC asserts that The Hierarchy required Nicholson to sign a non-disclosure/confidentiality agreement prior to working on the project which required her to keep UAC's confidential and proprietary information confidential, not share it with third parties, and not download or keep information once her work with The Hierarchy ended. *Id.* at ¶¶ 52, 53, Dkt. No. 14.

UAC alleges that Nicholson's contract with The Hierarchy ended in early-August 2023.

*Id.* at ¶ 60, Dkt. No. 14.  UAC claims that despite Nicholson's alleged obligation under the non-disclosure/confidentiality agreement, she kept UAC's "confidential and proprietary information." *Id.* at ¶ 62, Dkt. No. 14.  The confidential and proprietary information allegedly included UAC's "proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information, pricing and profitability information." *Id.* at ¶ 39, Dkt. No. 14.

Specifically, UAC asserts that Nicholson downloaded a copy of UAC's information to her computer.  *Id.* at ¶ 63, Dkt. No. 14.  UAC claims that Nicholson has refused to return the information.  *Id.* at ¶ 64, Dkt. No. 14.  UAC claims that Nicholson is the owner and operator of a website entitled https://the-hierarchy.net ("Website").  *Id.* at ¶¶ 75, 76, Dkt. No. 14.  UAC alleges that in March 2025, Nicholson admitted on the Website that she kept over 1,000 emails from UAC management and that she published excerpts of this confidential information on the Website.  *Id.* at ¶¶ 78-80, Dkt. No. 14.

### C.    Allegations Related to Online Statements

UAC also alleges that Nicholson has published false statements about UAC and its senior leadership team on the Website in March and April 2025.  *Id.* at ¶ 87, Dkt. No. 14.  The SAC contains various screenshots allegedly from the Website.  *See, e.g., id.* at ¶¶ 91, 93, 94, 95, Dkt. No. 14.  The statements include Nicholson's "opinion[s]" concerning potential tax irregularities with the City of Philadelphia.  *See, e.g., id.* at ¶¶ 91, 94, Dkt. No. 14.  UAC also alleges that Nicholson made defamatory statements on a Facebook page for "Milton Waddams" insinuating the UAC violated Pennsylvania's private inurement laws.  *Id.* at ¶¶ 105-111, Dkt. No. 14.

Additionally, the SAC asserts that Nicholson posted additional alleged defamatory statements on the Website following UAC's filing of this lawsuit in May 2025.  For example, UAC

alleges Nicholson posted snippets from publicly filed original Complaint on her website in May 2025. *Id.* at ¶ 113, Dkt. No. 14. UAC also alleges that Nicholson has posted additional statements raising concerns about billing irregularities with the City of Philadelphia. *Id.* at ¶¶ 116-117, Dkt. No. 14. UAC claims that on May 17, 2025, Nicholson posted a screenshot of an email *she sent to* an UAC employee showing that UAC gave permission to download files to her computer. *Id.* at ¶ 118, Dkt. No. 14.

## III.    LEGAL ARGUMENT

### A.    Personal Jurisdiction Does Not Exist Over Nicholson

#### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action where the Court lacks personal jurisdiction over the defendant. When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the burden shifts to the plaintiff to establish jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Once the defendant raises personal jurisdiction, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI,* 893 F.2d 595, 603-04 (3d Cir. 1990). A plaintiff may not "rely on the bare pleadings alone" to defeat a motion to dismiss for lack of personal jurisdiction. *Id.* ("plaintiff must respond with actual proofs, not mere allegations").

The determination of whether a court has personal jurisdiction over a non-resident defendant involves a two-step inquiry. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). "First, the court must apply the relevant long-arm statute to see if it permits the exercise of personal jurisdiction; then the court must apply the precepts of the Due Process Clause of the constitution." *Id.* at 259. Pursuant to Fed. R. Civ. P. 4(k), district courts generally exercise personal

jurisdiction according to the long-arm statute of the state where they sit. Pennsylvania's long-arm statute provides that its reach is coextensive with the limits placed on the states by the federal Constitution. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996 (citing 42 Pa. C.S.A. § 5322 (b)).

"Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.,* 137 S. Ct. 1773, 1779 (2017). A district court may exercise either general or specific jurisdiction over a non-resident defendant. *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 407, 414-15 (1984); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Ultimately, to survive a motion to dismiss, a plaintiff must show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted). Plaintiffs are unable to do so here. As discussed below, Nicholson lacks sufficient contacts with Pennsylvania to subject her to either general or specific jurisdiction by this Court. As such, dismissal is warranted.

### 2.    This Court Lacks General Personal Jurisdiction Over Nicholson

General jurisdiction exists when a defendant's contacts with the forum state are "'so 'continuous and systematic' as to render them essentially at home in the forum state.'" *Koch v. Pechota*, 744 Fed. App'x 105, 110 (3d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117,

127 (2014)). "[O]nly a limited set of affiliations with a forum will render a defendant to amenable all-purpose jurisdiction there." *Daimler*, 571 U.S. at 157.  With respect to individuals, "'the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Id.* at 138 (quoting *Goodyear*, 564 U.S. at 923).

The Third Circuit has instructed that a "a plaintiff must show significantly more than minimum contacts to establish general jurisdiction. The nonresident's contacts must be *continuous and substantial*." *Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (emphasis added).  "'The standard for establishing general jurisdiction is 'fairly high,' and requires that defendant's contacts be of the sort that approximate *physical presence*.'" *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000)) (emphasis added).

"[O]nly in an 'exceptional case' would an individual be 'essentially at home' in a forum other that of its domicile." *Id.* (quoting *Daimler AG*, 571 U.S. at 140 n.19). Courts look to a variety of factors in determining whether general jurisdiction exists including whether the defendant does business in Pennsylvania, owns property in Pennsylvania, pays taxes in Pennsylvania, maintains a bank account in Pennsylvania, and whether the defendant maintains an agent for service.  *Feinzig v. Doyon Svcs., Inc.*, No. CIV. A. 97-4638, 1998 WL 254973, at *2 (E.D. Pa. Apr. 17, 1998).

Only those contacts that have occurred "'within a reasonable period of time prior to the filing of [an] action are relevant to the Court's general jurisdiction inquiry.'"  *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587 (E.D. Pa. 2015) (quoting *Phila. Prof'l Collections, LLC v. Young*, No. 10-00724, 2010 WL 5257651, at *3 (E.D. Pa. Dec. 22, 2010)),  Periods of three to four years prior to filing the complaint have been held reasonable.  *See, e.g., Modern Mailers, Inc. v.*

*Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1053 (E.D. Pa. 1994) (holding a period of three (3) years reasonable); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421 (E.D. Pa. Feb. 9, 2015) (applying a four-year time frame to personal jurisdiction analysis).

Here, Nicholson is a resident of Warren, Ohio and has been since October 2019. SAC at ¶ 5, Dkt. No. 14; Nicholson Decl. at ¶¶ 3, 4, Ex. A. While Nicholson formerly resided in Pennsylvania, she has not had any meaningful contacts in the Commonwealth of Pennsylvania since 2019, six years ago. *Id.* at ¶ 5, Ex. A. She has not visited the Commonwealth of Pennsylvania since October 2019. *Id.* at ¶ 6, Ex. A. She does not currently own, rent, or maintain property in Pennsylvania and has not since 2019. *Id.* at ¶ 7, Ex. A. She does not maintain a mailing address or telephone number in Pennsylvania and has not since 2019. *Id.* at ¶¶ 8-9, Ex. A. She does not maintain any bank accounts in Pennsylvania and has not since 2019. *Id.* at ¶ 10, Ex. A. She has not paid taxes to the Commonwealth of Pennsylvania since 2018. *Id.* at ¶ 13, Ex. A.

Nicholson is not registered or licensed to do business in Pennsylvania and has not conducted business operations in Pennsylvania since 2019. *Id.* at ¶¶ 11-12, Ex. A. She does not regularly solicit business in Pennsylvania. Nicholson Decl. at ¶ 15, Ex. A. She does not have a registered agent for service in Pennsylvania. *Id.* at ¶ 14, Ex. A.

It is clear that Nicholson is not "essentially at home" in Pennsylvania and thus, subjecting her to general jurisdiction here would not comport with notions of fair play or substantial justice. While Plaintiffs have flooded the SAC with impertinent allegations concerning Nicholson's past in Pennsylvania, none of those supposed contacts—which were at least six or seven and up to seventeen years ago—are relevant. Indeed, it would be unreasonable to consider any contacts with Pennsylvania that occurred six or more years prior to the filing of the Complaint. Nicholson has been domiciled in Ohio for the past six years and has had no continuous and substantial contact in

Pennsylvania since that time. As such, this Court lacks general personal jurisdiction over Nicholson.

### 3.     The Court Lacks Specific Personal Jurisdiction Over Nicholson

"Specific jurisdiction is very different [from general jurisdiction]. For a court to exercise specific jurisdiction, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (2017) (quoting *Daimler AG*, 571 U.S. at 137) (emphasis in original). Specific jurisdiction exists only where (1) the defendant "purposefully directed" his or her activities at Pennsylvania, (2) the litigation arises out of one of those contacts, and (3) the exercise of jurisdiction comports with the notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317. "[T]he critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103–04 (3d Cir. 2009). Moreover, the minimum contacts necessary to create specific jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum state.'" *Walden*, 571 U.S. at 284 (emphasis in original).

"A determination of specific jurisdiction is claim specific, requiring a due process analysis for *each claim*." *Sudofsky v. JDC Inc.*, No. Civ.A. 03-CV-1491, 2003 WL 22358448, at *2 (E.D. Pa. Sept. 8, 2003) (emphasis added). In other words, the court's determination that it "'has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff's] other claims.'" *Patchen v. McGuire*, Civil Action No. 11-5388, 2012 WL 4473233, at *4 (E.D. Pa. Sept. 27, 2012)

Plaintiffs have failed to show that Nicholson purposefully directed the activities that are the subject of Plaintiffs' claims to Pennsylvania. Plaintiffs' allegations against Nicholson are that

she allegedly misappropriated information from UAC by downloading information from the cloud and that she posted allegedly defamatory statements regarding Plaintiffs on her website. Thus, the activities that Plaintiffs must demonstrate as directed to Pennsylvania are Nicholson's use and acquisition of UAC's information and her posting on the Website. They cannot.

### a.    Trade Secret Claims

UAC alleges that Nicholson misappropriated trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and Defend Trade Secrets Act ("DTSA"). SAC at Count I, Count II, Dkt. No. 14. Plaintiffs admit that at the time Nicholson began working on the data migration policy, UAC had already moved its information from physical servers in Philadelphia to a NetSuite cloud.[2] *Id.* at ¶¶ 44, 46, 49, Dkt. No. 14. Any alleged conduct by Nicholson related to this information, therefore, was not directed to Pennsylvania, as the information was stored in the cloud at the time she worked on the project. Indeed, none of the work performed by Nicholson for The Hierarchy was conducted in Pennsylvania. Nicholson Decl. at ¶ 19, Ex. A. All of the work she performed was done from her home in Warren, Ohio. *Id.* at ¶ 20, Ex. A. While the SAC alleges that The Hierarchy is headquartered in Philadelphia, Pennsylvania (SAC at ¶ 48, Dkt. No. 14), "[r]emotely working for a Pennsylvania corporation [and] brief check-ins with managers . . . do not rise to the level of purposefully directed activities that enjoy the benefits and protection of Pennsylvania law." *TorcUP, Inc. v. Aztec Bolting Svcs., Inc.*, 386 F. Supp. 3d 520, 527 (E.D. Pa. 2019).

"When a defendant's contacts with a forum are insufficient under traditional specific jurisdiction, a court can exercise personal jurisdiction when an intentional tort is alleged under the

---

[2] NetSuite is a "cloud-based business management platform." https://www.netsuite.com/portal/resource/articles/erp/what-is-netsuite.shtml (last visited 8/7/2025).

test derived from *Calder v. Jones*." *TorcUP*, 386 F. Supp. 3d at 528 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  Under *Calder*, "'an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied.'"  *Id.* at 528 (quoting *IMO Industries,* 155 F.3d at 260.  Jurisdiction may be exercised over a defendant if the plaintiff demonstrates that "'(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.'"  *Id.* (quoting *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)).

It is important to note that both traditional specific jurisdiction and the *Calder* effects test "require intentionality on the part of the defendant such that they would expect to be haled to court in a given forum because of their contacts and activities in a forum."  *Id.*  Only where the expressly aimed element is met should the court consider the other elements.  *Id.*  To meet this element, the plaintiff must allege facts establishing "the defendant 'knew that the point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'"  *Id.* (quoting *Marten*, 499 F.3d at 298).

This Court's decision in *TorcUP* is particularly instructive.  There, an employer brought an action against a competitor and former employee alleging, among other things, misappropriation of trade secrets.  Although the employer was based in Pennsylvania, the employee worked solely from Texas.  The Court held that the employer's allegations that the employee's actions in Texas had harmed Plaintiff's Pennsylvania operations were "conclusory and without merit."  386 F. Supp. 2d at 528.  Although the Court found that the employer had felt the

harm in Pennsylvania, "the alleged conduct that led to the alleged harm was directed at Texas, not Pennsylvania." *Id.* Since "[n]o alleged intentional tort by the Defendants was directed at Pennsylvania such that it can be said that Pennsylvania was the focal point of harm," the Court held it could not exercise jurisdiction under *Calder.*

Here, Plaintiffs simply assert that they reside in Pennsylvania and make conclusory allegations that they were harmed in Pennsylvania. Even if they were, however, the SAC is completely devoid of any facts supporting allegations that Nicholson's alleged misappropriation of information was directed at Pennsylvania. To the contrary, the SAC alleges that the information Nicholson allegedly misappropriated was located in the cloud, not physically in Pennsylvania. As such, this Court does not have specific jurisdiction over Plaintiffs' DTSA and PUTSA claims.

### b.    Defamation and False Light

Plaintiffs allege that Nicholson defamed them and placed them in a false light through postings on her Website and Facebook page. It is well-established that simply "post[ing] on a website that is accessible globally . . . is insufficient to sustain specific personal jurisdiction." *Patchen*, 2012 WL 4473233, at *10.

Plaintiffs do not allege that any business was conducted by Nicholson through the Website. Rather, the website is a national platform to provide information concerning matters of public importance. Nicholson did not avail herself of conducting business in Pennsylvania by creating and operating her informational website in Ohio and thus, is not subject to specific jurisdiction.

Moreover, *Calder* does not impose specific jurisdiction over these claims. While the SAC contains conclusory allegations that Plaintiffs were harmed in Pennsylvania, "the mere fact that a plaintiff suffers harm in the forum state is not enough to give rise to personal jurisdiction in that state." *Abira Medical Laboratories, LLC v. Karim*, Civil Action No. 20-4317, 2022 WL 44051,

at * 4 (E.D. Pa. Jan. 5, 2022).  Rather, a "plaintiff must show 'the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, *and point to a specific activity* indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* (quoting *Marten*, 499 F.3d at 297 (emphasis in original).  Plaintiffs' allegations that Nicholson references Philadelphia in her postings is not enough to confer specific jurisdiction.  *See, e.g., Gorman v. Jacobs*, 597 F. Supp. 2d 541, 550-51 (E.D. Pa. 2009) (dismissing for lack of jurisdiction, finding references to Pennsylvania in website postings insufficient);  *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717 (E.D. Pa. 1999) (finding lack of specific jurisdiction where defendant posted defamatory comments in internet discussion group about Pennsylvania resident whose business practice was focused in Pennsylvania).

### c.    Conversion

UAC's conversion claim is essentially a restatement of their DTSA and PUTSA claims; namely, Plaintiffs allege in all three that Nicholson converted UAC property by misappropriating confidential and proprietary information.  As stated above, any improper downloading of information by Nicholson took place in Ohio, not Pennsylvania.  For the same reasons the Court lacks specific jurisdiction over the DTSA and PUTSA claims, it lacks specific jurisdiction over UAC's conversion claim.  *See also Eagle Sys., Inc. v. Mod-Pac Corp.*, No. CV 18-17062 (FLW), 2019 WL 2536005, at *4 (D.N.J. June 19, 2019) (no specific jurisdiction over conversion claim where software was downloaded in another state).

### 3.    Exercising Jurisdiction Over Nicholson Would Offend Traditional Notions of Fair Play and Substantial Justice

Finally, dismissal is further warranted because haling Nicholson, an individual who is domiciled in Ohio, would offend "traditional notions of fair play and substantial justice." *D'Jamoos ex rel. Weingeroff*, 566 F.3d at 102.  The Supreme Court has looked to several factors

to determine whether fairness enables or strips jurisdiction, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies . . . and the procedural and substantive interests of other nations." *O'Connor*, 496 F.3d at 324 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), and *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).

These factors all weigh heavily against requiring Nicholson to litigate this dispute in Pennsylvania.  First, Nicholson is domiciled in Ohio and all of the work she performed for The Hierarchy occurred at her home in Ohio.  Nicholson Decl. at ¶¶ 19, 21, Ex. A.  The burden on her to litigate this dispute here, over 380 miles from her home would be unreasonable.  *See Ryan v. Union Mut. Fire Ins. Co.*, No. 2:10-cv-04438, 2011 WL 3666492, at *6 (E.D. Pa. Aug. 15, 2011) ("The burden on the defendant of litigating in a foreign forum is of primary concern in determining the reasonableness of jurisdiction.") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Plaintiffs attach a copy of a purported contract between Nicholson and The Hierarchy and cite to a choice of law provision in that contract.  SAC at ¶¶ 52, 52, Dkt. No. 14 and Exhibit H, Dkt. No. 14-9.  UAC is not a party to that contract.  Whether or not Nicholson may be bound by that provision in any action with *The Hierarchy*, it is simply not applicable here, as The Hierarchy is not a party to this lawsuit.

For all the foregoing reasons, the Court should dismiss the case against Nicholson for want of personal jurisdiction.

**B.    Alternatively, Plaintiffs Have Failed to State a Claim**

Even if personal jurisdiction existed over Nicholson—which it does not—dismissal of is

still warranted because Plaintiffs have failed to state a claim upon which relief may be granted.

### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (1999).

Following *Iqbal*, the Third Circuit has adopted a two-part analysis for district courts to follow when presented with a motion to dismiss: "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While all well-pleaded facts must be accepted as true, the court may disregard any legal conclusions. *Id.* Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 678). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.*

### 3. UAC Fails to State a Claim for Misappropriation of Trade Secrets

UAC has asserted claims for misappropriation of trade secrets under PUTSA and DTSA. SAC at Count I, Count II, Dkt. No. 14. Because the SAC fails to state a claim for relief under either statute, Counts I and II must be dismissed.

Both the DTSA and PUTSA prohibit the misappropriation of trade secrets. *Axalta Coating Systems, LLC v. Peck*, 2021 WL 3026856, at *13 (E.D. Pa. Jan. 22, 2021) (citing 18 U.S.C. § 1832(a) and 12 Pa. C.S.A. §§ 5503-04). The DTSA requires a showing that the plaintiff (1) owns

a trade secret and (2) that the defendant misappropriated the trade secret.  *Ecosave Automation Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021).  Similarly, PUTSA requires a showing of (1) the existence of a trade secret, (2) communications of the trade secret pursuant to a confidential relationship, (3) use of the trade secret in violation of that confidence, and (4) harm to the plaintiff.  *Id.*  Because both statutes require similar elements, they are analyzed together.  *North American Dental, Mgmt., Inc. v. Phillips*, Civil Action No. 23-1202, 2025 WL 475777, at *3 (W.D. Pa. Feb. 12, 2025).

As a threshold matter, a plaintiff seeking to recover under either the DTSA or PUTSA "must first establish the existence of a trade secret."  *Ecosave*, 540 F. Supp. 3d at 500.  It is UAC's "burden to present sufficient evidence that it even possessed trade secrets worthy of protection." *Id.* at 501.  UAC has failed to meet this burden.

The DTSA defines "trade secret" as including "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes."  18 U.S.C. § 1839(3).  The PUTSA defines "trade secret" as including "a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process."  12 Pa. C.S.A. § 5302.  Both the DTSA and PUTSA further require that a plaintiff show "'(a) the owner has taken reasonable means to keep [it] secret; (b) derives independent economic value, actual or potential from [it] being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use.'"  *Ecosave*, 540 F. Supp. 3d at 500 (quoting *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018)).

The SAC fails to identity the purported trade secrets at issue with any particularity.  Indeed,

17

UAC does not even refer to the allegedly misappropriated information as "trade secrets," but, rather, asserts that Nicholson misappropriated "***confidential and proprietary information***" which UAC defines as "proprietary processes, current and future business plans, strategies for new services and expansion, customer and sales information, pricing and profitability information." SAC at ¶ 39, Dkt. No. 14 (emphasis added).  Elsewhere, UAC alleges that its plans and proposals including the identity of businesses and developers that do business with UAC.  *Id.* at ¶ 81, Dkt. No. 14.

While a plaintiff need not disclose a trade secret "in detailed in a complaint alleging misappropriation . . . some allegation of novelty is necessary."  *Albee v. Albee*, Civil Action No. 21-3984, 2022 WL 2819135, *3 (E.D. Pa. July 19, 2022).  Where a complaint only asserts "a conclusory description of the trade secrets at issue," dismissal is required.  *Sensus USA, Inc. v. Elliott Bay Engineering, Inc.*, Civil Action No. 10-1363, 2011 WL 2650028, at *7 (W.D. Pa. July 6, 2011).  Here, UAC's boilerplate allegations that Nicholson misappropriated vague categories of alleged "confidential and proprietary" information are insufficient.  While some of this information may be commercially confidential or sensitive, *that does not mean it is a trade secret.*

"[B]usiness information is not necessarily a trade secret simply because it is confidential." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 609 (E.D. Tex. 2021).  Indeed, "[c]onfidential information and trade secrets are not the same."  *H&E Equip. Servs. v. St. Germain*, No. 19-134-SDD-EWD, 2020 WL 1678327, at *6 (M.D. La. Apr. 6, 2020); *see also St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5335559, at *2 (D. Ariz. Nov. 7, 2011) ("[C]onfidentiality alone does not transform business information into a trade secret."); *Sw. Whey, Inc. v. Nutrition 101, Inc.*, 117 F.Supp.2d 770, 777 (N.D. Ill. 2000) ("[G]eneralized confidential business information does not constitute a protectable trade secret."

(quotation omitted)).

The DTSA and the PUTSA make plain that, in addition to being confidential, business information alleged to be a trade secret must have independent economic value and that value must be derived from the fact that the information is secret. "[T]rade secret information 'derives [its] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from [that information's] disclosure or use.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021) (quoting 18 U.S.C. § 1839(3)(B).

Beyond formulaic recitations, UAC does not allege any facts establishing that its "confidential and proprietary information" has an independent economic value. UAC fails to show that the alleged trade secrets are not general knowledge in the industry or that UAC made any attempt to keep such information secret. Because the SAC fails to sufficiently identify any trade secret, Counts I and II must be dismissed.

### 4.    Plaintiffs Have Failed to State a Claim for Defamation

Plaintiffs allege that Nicholson has published numerous false and defamatory per se statements about UAC on her Website as part of a "public smear campaign." SAC at ¶ 87, Dkt. No. 14. Because the statements are non-actionable opinion, Plaintiffs cannot recover.

First, to be actionable, a defamatory statement must be false statement of *fact. Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. 2001) ("Only statements of fact, not expressions of opinion, can support an action for defamation."). Statements of opinion and rhetorical hyperbole are not actionable defamation unless they imply the existence of undisclosed, defamatory facts. *Kryeski v. Schott Glass Tech. Inc.,* 626 A.2d 595, 600 (Pa. Super. 1993). Whether such a specifically alleged statement constitutes actionable fact or non-actionable opinion

is a question of law for the trial court to determine. *Wecht v. PG Publishing Co.,* 510 A.2d 769, 774 (Pa. Super. 1986).

Second, "[t]o sustain a complaint in libel, [the plaintiff] must establish that the challenged publication is defamatory." *Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213, 215 (Pa.), *cert, denied* 457 U.S. 1134 (1982). Pennsylvania courts have stringently interpreted this requirement and held, for example, that it is not defamatory to say that one is a bigot or anti-Semite, *Rvbas v. Wapner,* 457 A.2d 108 (Pa. Super. 1983), is "crazy" and "emotionally unstable," *Kryeski v. Schott Glass Techs., Inc.,* 626 A.2d 595 (Pa. Super. 1993), or engaged in political "patronage," *Rush v. Philadelphia Newspapers. Inc.,* 732 A.2d 648 (Pa. Super. 1999). Thus, "[i]t is not enough that the victim ... be embarrassed or annoyed, he must have suffered that kind of harm which has *grievously fractured* his standing in the community of respectable society." *Scott-Taylor v. Stokes,* 229 A.2d 733, 734 (Pa. 1967) (emphasis added)

Courts repeatedly emphasize that a plaintiff may not offer a construction of a publication that isolates particular words and phrases. A statement cannot be made defamatory where the "reader must take the statement out of context" or otherwise give the statement "a tortured and unreasonable construction." *Livingston v. Murray,* 612 A.2d 443, 450 (Pa. Super.), *appeal denied,* 617 A.2d 1275 (Pa. 1992). In other words, a statement "cannot be rendered libelous 'by an innuendo which puts an unfair and forced construction on the interpretation of the publication. An innuendo must be warranted, justified and supported by the publication." *Thomas Merton Center,* 442 A.2d at 216 (quoting *Sarkees v. Warner-West Corp.,* 37 A.2d 544, 546 (Pa. 1944) and *Bogash v. Elkins,* 176 A.2d 677 (Pa. 1962)).

There can be no doubt that the statements referenced in the SAC are opinion, not fact. Indeed, as UAC acknowledges, Nicholson clearly states that she is giving her opinion. *See, e.g.,*

SAC ¶¶ 91, 94, Dkt. No. 14.  Her statements reflect her opinion about Plaintiffs' motivations for their actions.  Her comments that Plaintiffs "seem" to be doing something, by their nature, are an acknowledgement of lack of certainty and an expression of skepticism about a contrary fact or factual denial, thus negating any reasonable inference that the speaker is making the assertion as a provable statement of fact.  *See Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. 2019) ("[A]n expression of opinion only conveys a subjective belief of the speaker.").  Moreover, the statements, when read in context on a whole would seem that Nicholson's opinions are more about the governmental waste in the City of Philadelphia than about Plaintiffs.

As the Third Circuit Court of Appeals has held, "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior ... Those statements are just ... opinions based on disclosed facts, so they too are not actionable." *McCafferty v. Newsweek Media Grp*., 955 F.3d 352, 359 (3d Cir. 2020). In *In re Maze*, No. 98-33715, 1999 WL 554600, at *2 (E.D. Pa. July 16, 1999), the court held that statements that the plaintiff failed to pay taxes, "which money he seemingly misappropriated from his employees[,]" was non-actionable opinion.  That same result should be obtained here

## 5. Plaintiffs Have Failed to Plead a Claim for False Light Invasion of Privacy

Count IV asserts a claim for false light invasion of privacy.  To establish a cause of action for false light, a plaintiff must show the following elements: (1) publicity; (2) given to private facts; (3) that would be highly offensive to a reasonable person; and (4) are not of a legitimate concern to the public. *Strickland Univ. of Scranton,* 700 A.2d 979, 987 (Pa. Super. 1997); *see also PCIC v. Kiely,* 73 Pa. D.&C.5th 552, 2018 WL 11651353, at *3 (Phila. Cnty. Oct. 3, 2018) (noting elements of false light "include private facts which would be highly offensive to a reasonable person").  Plaintiffs' claims fail because the statements clearly report on "non-private" facts.  The

SAC does not even allege that the statements were private facts. As such, Count IV fails to state a claim upon which relief may be granted.

In a footnote in the SAC, Plaintiffs state that they are not required to show private facts, based on a non-binding 2023 decision from this federal court. SAC at p. 26 n.20, Dkt. No. 14. This Court has recognized there is a split in state and federal courts regarding this issue. *See, e.g., Ciolli v. Iravani,* 651 F. Sup. 2d 356, 377 n.9 (E.D. Pa. 2009). It does not appear that Pennsylvania state court decisions citing private facts as an element have been overruled. Moreover, in 2024, this Court noted that "private facts" were an element of false light invasion of privacy. *Dassault Systemes Deutschland GMBH*, Civil Action No. 23CV4490, 2024 WL 230076, at *4 (E.D. Pa. May 20, 2024).

### 6.     UAC's Claims for Conversion Fail As a Matter of Law

Count V is a conversion claim, alleging that Nicholson used UAC's "trade secrets, confidential and proprietary information discussed above, and other UAC property." SAC at ¶ 156, Dkt. No. 14. Other than the alleged trade secret items allegedly misappropriated, UAC fails to identify any other information or property purportedly taken. Consequently, these claims are preempted by PUTSA, which preempts tort law claims based on misuse of valid trade secrets, and they otherwise do not plead a plausible claim for misuse of confidential information.

PUTSA expressly preempts all tort law and restitutionary claims. *See* 12 P.S. § 5308. Thus, to the extent UAC alleges Nicholson converted UAC's purported trade secrets, those claims are preempted. UAC's common law claim for conversion of business information is, therefore, preempted. *Kimberton Healthcare Consulting v. Primary PhysicianCare, Inc.*, No. 11–4568, 2011 WL 6046923, at *3–4, (E.D. Pa. Dec. 6, 2011) (common law claim for conversion of trade secrets preempted by PUTSA).

To the extent UAC alleges that confidential business information was converted, those claims likewise fail because they have not been sufficiently pleaded. UAC does not allege that any specific property was taken by Nicholson, but, rather, vague "confidential and proprietary information discussed above and other UAC property." SAC at ¶ 156, Dkt. No. 14. Count V, therefore, should be dismissed.

### C.    Motion to Strike Immaterial, Impertinent, and Scandalous Allegations

It is clear that UAC is using its Second Amended Complaint to smear, intimidate, harass, and embarrass Nicholson. The SAC is replete with immaterial, impertinent, and scandalous allegations which should be stricken.

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial allegations are those that have "no essential or important relationship to the claim for relief." *Conklin v. Anthou*, No. 1:10-C-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011). Matters are impertinent if they do "not pertain, and are not necessary, to the issues in question." *Id.* Scandalous matters are those "'which improperly case[] a derogatory light on someone, most typically a party to the action.'" *Vay v. Huston*, Civil Action No. 14-769, 2015 WL 4461000, at *4 (W.D. Pa. July 21, 2015) (quoting *Donnelly v. Commonwealth Fin. Sys., Inc.*, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008)). Scandalous matter "'must reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court.'" *Id.* (quoting *Donnelly*, 2008 WL 762085, at *4).

The decision to strike allegations is left to the sound discretion of the trial court. *Riemensnyder v. Paragon Sys.*, No. 3:20-CV-109, 2022 WL 1123187, at *1 (M.D. Pa. Apr. 14, 2022). Motions to strike should be granted where "'the allegations have no possible relation to

the controversy and may cause prejudice to one of the parties or [that] the allegations confuse the issues.'" *Rose v. Rothrock*, Civil Action No. 08-3884, 2009 WL 1175614, at *7 (E.D. Pa. Apr. 29, 2009) (quoting *River Road Development Corp. v. Carlson Corporation-Northeast*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).   The SAC contains several instances of impertinent, immaterial, and scandalous matters and the Court should exercise its discretion to strike same.

First, UAC includes a photograph of Nicholson's expired Pennsylvania license in Paragraph 11 and attaches another copy of the license as part of Exhibit I.  The license is produced without any redactions.  Local Rule 5.1.3 mandates that personal identifiers including "dates of birth" be redacted in filed documents.  Local Rule 5.1.3.  This mandate is echoed in the Federal Rules of Civil Procedure which likewise require redaction of the year of an individual's birth.  Fed. R. Civ. P. 5.2(a)(1).  The Committee Notes to Rule 5.2 further caution that "[i]t may also be necessary to protect information not covered by the redaction requirement—such as driver's license numbers."  *Id.*, Advisory Committee's Note.  UAC's violation of these rules alone warrants striking or redacting Nicholson's driver's license number and birth date, at a minimum.

Second, UAC repeatedly refers to Nicholson as a criminal and fugitive who has repeatedly engaged in a pattern of criminal activity.  *See, e.g.,* SAC at ¶¶ 11, 12, 13, 29, 32, 50, Dkt. No. 14.  Plaintiffs also refer to a nearly six year old bench warrant allegedly entered against Nicholson for a claim of harassment.  *Id.* at ¶¶ 25-32 and Exhibits E-G, Dkt. No 14-5 to 14-8.  Such references cast a "derogatory light" on Nicholson and "reflect cruelly" on her moral character.  *See Vay*, 2015 4461000, at *4 (citations omitted).  Moreover, this vitriol is completely immaterial and impertinent to UAC's claims.  The allegations serve no purpose other than to prejudice this Court against Defendant.

Third, UAC refers to a 2008 criminal conviction for false incrimination, harassment, retaliation, and unlawfully accessing store communications and attaches the criminal docket.  SAC at ¶¶ 15-16 and Exhibit B.  UAC details this 17-year-old criminal conviction to show Nicholson's "**Pattern of Harassing and Retaliatory Behavior**."  SAC at p. 3, Dkt. No. 14 (emphasis in original).  At the outset, "[e]vidence of any other crime, wrong, or act is *not admissible* to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b) (emphasis added); *see also Carpenter v. Vaughn*, 888 F. Supp. 635, 650 (M.D. Pa. 1994).  Moreover, with respect to criminal convictions older than ten years, such evidence is only admissible to impeach credibility where its probative value "substantially substantially outweighs its prejudicial effect" and the person seeking to introduce such evidence gives the adverse party "reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).  Beyond the fact the seventeen (17) year old conviction bears no relationship to the claims and issues in this case, such conviction is inadmissible and should be stricken.

Fourth, Plaintiffs also reference an unrelated nine (9) year old civil lawsuit, characterizing same as demonstrating "illegal activity," and attach the complaint.  SAC at ¶¶ 17-24, Dkt. No. 14 and Exhibit C, D, Dkt. No. 14-3, 14-4.  "'[R]eferences to preliminary steps in litigation or administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure.'"  *Clugston v. Nationwide Mut. Ins. Co.*, No. 3:05-CV-2680, 2006 WL 1290450, at *4 (M.D. Pa. May 10, 2006) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003)).  References to this unrelated lawsuit are not essential to any of UAC's claims and should be stricken.

To the extent that Plaintiffs argues that they referenced and/or attached any of the above information in an effort to establish personal jurisdiction, for the reasons stated above, none of these so-called "contacts"—some of which are decades old—can be used to establish jurisdiction. This information was included for one purpose only: to cause prejudice to Nicholson. As such, the information should be stricken.

## V.    CONCLUSION

For all the foregoing reasons, Defendant Karen Nicholson respectfully requests that this Honorable Court dismiss the Second Amended Complaint with prejudice. Alternatively, Nicholson requests that the Court strike Paragraphs 6, 11 (including photograph of driver's license), 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 50 and Exhibits A, B, C, D, E, F, G, and I (driver's license) pursuant to Federal Rule of Civil Procedure 12(b)(f).

Respectfully submitted,

**GORDON REES**
**SCULLY MANSUKHANI, LLP**


By: _/s/ Sara Anderson Frey_
Sara Anderson Frey [PA 82835]
1717 Arch Street, Suite 610
Philadelphia, PA  19103
(215) 717-4009
sfrey@grsm.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of September, 2025, I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF electronic filing system upon all counsel of record.


      */s/ Sara Anderson Frey*
Sara Anderson Frey